BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
CASSIDY CLARK (SBN 335523)
180 Grand Avenue, Suite 1380
Oakland, California 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Emails: bryan@bryanschwartzlaw.com
cassidy@bryanschwartzlaw.com

LEGAL AID AT WORK
JINNY KIM (SBN 208953)
JARED ODESSKY (SBN 333555)
180 Montgomery Street, Suite 600
San Francisco, California 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
Emails: jkim@legalaidatwork.org
jodessky@legalaidatwork.org

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JANE DOE, individually, and on behalf of all others similarly situated,

*Plaintiff,*

v.

CAROL SPAHN, in her official capacity as Acting Director of the Peace Corps,

*Defendant.*

Case No.: 3:21-cv-04007-LB

**FIRST AMENDED COMPLAINT**

Complaint Filed: May 26, 2021
Judge: Honorable Laurel Beeler

## INTRODUCTION

1. This class action lawsuit brought by Named Plaintiff Jane Doe, on her own behalf and on behalf of the proposed Class identified below, challenges the systematic failure of the Peace Corps to meet its obligations under Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability in programs or activities conducted by an Executive Agency.

2. As detailed in the Factual Allegations below, this lawsuit challenges, among other deficiencies, the Peace Corps' policy and practice of discriminating against invitees[1] on the basis of disability based on the information they provided. The Peace Corps fails to conduct individualized assessments or consider reasonable accommodations for invitees with disabilities when conducting its medical clearance process.

3. Plaintiff Jane Doe was an invitee, provisionally offered a Peace Corps Volunteer position. Plaintiff Doe was disqualified because she disclosed a disability. In denying her a position, the Peace Corps followed its standard process, failing to conduct an individualized assessment of Plaintiff, failing to engage in the interactive process with her in good faith, and failing to consider reasonable accommodations (if any were needed) that would have allowed Plaintiff to perform all the essential functions of a Volunteer abroad.

4. The Peace Corps routinely fails to meet its obligations under the Rehabilitation Act by denying individuals with disabilities participation in the federally-funded program. This lawsuit seeks an end to this systemic discrimination against people with disabilities. Plaintiff and the class members have no adequate remedy at law and, unless Defendant is preliminarily and permanently enjoined, Plaintiff and the class members will continue to suffer irreparable harm as a result of the denial of their civil rights under Section 504 and will continue to be denied the opportunity to serve in the Peace Corps. Plaintiff and the class members seek declaratory and injunctive relief as set forth below, including an injunction ordering Defendant to comply with

[1] Throughout, the term "invitee" refers to individuals who were extended an invitation to become a Peace Corps Volunteer and have accepted their invitation to serve, but have not been placed as a Volunteer.

the requirements of Section 504 and non-monetary injunctive relief for class members, and to benefit future applicants and invitees, as well as attorneys' fees and costs.

**THE PEACE CORPS AND THE NAMED PARTIES**

5. The Peace Corps is an independent agency within the executive branch of the United States government. 22 U.S.C.A. § 2501-1. The Peace Corps utilizes its Volunteer corps to "promote world peace and friendship," meet the basic needs of people living in poverty abroad, and "help promote a better understanding of the American people on the part of the peoples served and a better understanding of other peoples on the part of the American people." 22 U.S.C.A. § 2501.

6. By serving abroad, Peace Corps Volunteers carry out the foreign policy goals of the Peace Corps, including "the promotion of a better understanding of other peoples on the part of the American people." 22 U.S.C.A. § 2517. Peace Corps Volunteers are provided compensation, training, leave, healthcare, and retirement credits in exchange for their service. 22 U.S.C.A. § 2504(a).

7. Individual and Representative Plaintiff Jane Doe resided in Berkeley, California at the time of her application, when she was subjected to medical screening, and through the denial of the Peace Corps medical clearance and Defendant's stripping of her invitation to serve as a Peace Corps Volunteer.

8. Plaintiff Doe has a disability, perceived disability, and record of disability which caused the Peace Corps to deny her placement abroad as a Volunteer. In particular, at all times relevant to this Complaint, Plaintiff Doe had Major Depressive Disorder and Generalized Anxiety Disorder, for which she was taking prescription medications. Moreover, the Peace Corps regarded Plaintiff Doe as disabled by perceiving her impairment as substantially limiting a major life activity.

9. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability under the Rehabilitation Act. In particular, Plaintiff Doe was qualified for the Peace Corps Volunteer position and could have performed all essential functions of the position with or without reasonable accommodations.

10. Defendant Carol Spahn is the Acting Director of the Peace Corps. Defendant Spahn was named Acting Director in January 2021 and has been delegated the authority and responsibilities of the director role. Defendant Spahn is sued in her official capacity.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this case is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations.

12. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events and omissions giving rise to the claims set forth herein occurred and continue to occur in this district.

13. The Peace Corps maintains four regional offices in the United States. The Peace Corps West Regional Recruiting Office is located in Oakland, California, within this judicial district.

14. As part of its extensive recruitment efforts at UC Berkeley, a Peace Corps Advisor based in this district holds office hours at the Career Center at UC Berkeley every Thursday. Driven at least in part by these efforts, UC Berkeley is the all-time top producer of Peace Corps Volunteers in the country.

15. The Peace Corps Advisor first met with Plaintiff Doe at the Career Center, where the Advisor told her about the program and its requirements and encouraged her to apply. Plaintiff Doe completed the required pre-selection Health History Form at her home in Berkeley. The Advisor sent follow-up emails to Plaintiff Doe throughout Plaintiff's application process, which she reviewed at her home in Berkeley. The Advisor and Plaintiff Doe met again in Berkeley to discuss the list of medications that the Peace Corps used to screen out invitees.

16. The Peace Corps interviewed Plaintiff Doe for a Volunteer position from her home in Berkeley. In addition, the Peace Corps sent Plaintiff Doe both her invitation to join the Peace Corps and, subsequently, the denial of her medical clearance to her home in Berkeley.

///

///

17. Plaintiff Doe continued to reside in Berkeley, California when she received her invitation to serve and through the medical clearance process. She remained in Berkeley, California when she received her initial denial of medical clearance.

18. Plaintiff subsequently appealed the denial of her medical clearance, and received her final denial of medical clearance, and notification that her position was being stripped, all from her home in Berkeley.

19. In June 2020 and through August 2021, Plaintiff temporarily relocated to Sandy Springs, Georgia to be closer to family during the COVID-19 pandemic and continued to work remotely for a laboratory in Berkeley, California. In September 2021, Plaintiff Doe relocated to Chapel Hill, North Carolina but still assists the lab in Berkeley.

## FACTUAL ALLEGATIONS

***Peace Corps' Policies and Practices Discriminate Against Invitees with Disabilities.***

20. Up until the filing of the Complaint in this action, the Peace Corps encouraged invitees to review on its website a publicly available list of "health conditions that are difficult to accommodate" in the Peace Corps, including around 100 medical conditions that are "typically not supported" as well as nearly 100 medications that trigger medical ineligibility. *See* Exhibit A (printed November 12, 2020); https://www.peacecorps.gov/volunteer/health-and-safety/medical-information-invitees/#medical-conditions-difficult-to-accommodate (last visited May 20, 2021). This list systematically discouraged individuals with disabilities, with records of disabilities, and with perceived disabilities from applying to the Peace Corps. After the filing of the Complaint, which referenced this discriminatory list, the Peace Corps removed the list from its website, on or about May 26, 2021.

21. After completing the pre-selection Health History Form and other non-medical assessments, the applicant will become an invitee. Invitees submit medical documentation for review by the Peace Corps Medical Office. The Peace Corps Medical Office is responsible for conducting the Medical Clearance process for all invitees who are extended an invitation to serve in the Peace Corps.

///

22. All invitees must submit documentation of vaccinations, lab tests, medical evaluation, and dental care. The Medical Office may also require specialist examinations and additional forms based on the invitee's medical disclosures. When the Medical Office requires specialist examinations and forms, invitees are often required to pay substantial out-of-pocket costs that are not reimbursed.

23. Upon information and belief, the Peace Corps applies common, unlawful screening guidelines to evaluate whether invitees are medically qualified. For example, upon information and belief, as a regular practice and policy, the Peace Corps tends to screen out individuals who have been symptomatic of dozens of medical conditions within a designated time period, who have recently changed their medication, or who have ongoing treatment.

24. When the Peace Corps medically disqualifies an invitee, that invitee can appeal the decision. To appeal, invitees upload further information. The Peace Corps does not guarantee that the decision will come before the invitee's scheduled departure. The entire medical screening process takes place via an online portal, and the Medical Office does not typically converse with invitees or their medical providers outside of messages on the portal. The Medical Office also does not conduct in-person, independent medical evaluations.

25. Upon information and belief, the Peace Corps does not consider or assess an applicant's potential need for disability-related accommodations during the medical clearance process. Rather, as a regular practice and policy, the Peace Corps discriminates against them based upon stereotypes about their medical conditions, denying them opportunities.

***Peace Corps' Discriminatory Policies and Practices as Applied to Plaintiff Doe.***

26. As a part of the application process, Plaintiff Doe filled out a Health History Form on January 2, 2020. In her Health History Form, she disclosed her disabilities and that she was prescribed medications for her disabilities.

27. In February 2020, Plaintiff Doe was selected for a Peace Corps Volunteer position in North Macedonia.

28. Following her selection, on February 20, 2020, a pre-service nurse from the Peace Corps Medical Office requested additional information from Plaintiff Doe because she reported

her disabilities on her Health History Form. Plaintiff timely provided the requested information on February 24, 2020. All communications between Plaintiff and the Medical Office took place via an online Peace Corps portal.

29. In response, on February 24, 2020, the nurse sent Plaintiff a link to a list of "conditions difficult to accommodate in the Peace Corps."

30. On February 25, 2020, without an interactive process or consideration of potential reasonable accommodations, or a compliant undue hardship/direct threat analysis, the Medical Office notified Plaintiff that her medical clearance was denied. The reason given in her denial was that Plaintiff recently had a change in medications and that she was currently engaged in treatment for her disabilities. The denial also stated, without basis in fact, and contrary to the opinion of Plaintiff and her own doctor: "It is likely, to a reasonable degree of medical certainty, the potentially stressful environment of Peace Corps would aggravate, exacerbate, accelerate, or permanently worsen your pre-existing medical concerns, which would lead to your being unable to complete a tour of 27 months without unreasonable disruption of service."

31. On February 27, 2020, Plaintiff wrote an email to the Medical Office in response to her non-clearance, explaining that her disabilities and her medications would not inhibit, at all, her ability to serve in North Macedonia, where she was set to move. She explained that her health care providers offered to continue treating her remotely, and that she had located private pharmacies and delivery services in Skopje, near the Peace Corps Headquarters in North Macedonia, that would allow her to receive her medications. Additionally, Plaintiff described her experience successfully spending extensive time in Syria, Lebanon, and Peru under austere conditions, despite her disabilities. In this email, Plaintiff offered to put the Medical Office in direct contact with her treating providers, who would attest to Plaintiff's ability to serve abroad.

32. The Peace Corps did not engage in any interactive process with Plaintiff, or contact Plaintiff's treating providers, at least one of which is located in this district, who were in the best position to evaluate her ability to serve abroad.

33. On February 28, 2020, the Medical Office notified Plaintiff of her right to appeal their decision to deny her medical clearance.

34. Ms. Doe timely submitted an appeal on March 28, 2020, including a personal statement describing her ability to serve abroad. Plaintiff reiterated her successful experience abroad with her disabilities and her treatment regimen, all things she could continue in North Macedonia. Plaintiff presented the Peace Corps with research she had done on private pharmacies near the Peace Corps Headquarters in North Macedonia, including delivery services, which would allow her to obtain her prescription.

35. On April 18, 2020, Plaintiff informed the Medical Office nurse that she was completing her treatment and that she planned to discontinue her medication with her providers' approval. This information did not change the Peace Corps' decision to reject Plaintiff later that year.

36. Defendant did not ask Plaintiff about any need for reasonable accommodations, and Plaintiff requested no accommodation of the Peace Corps which would have imposed any burden – let alone an undue hardship – on the agency.

37. On August 5, 2020, the Peace Corps notified Plaintiff that her appeal had been denied and that her candidacy for the Peace Corps Volunteer position was being terminated.

38. The Peace Corps did not consider any reasonable accommodations for Plaintiff prior to denying her opportunities.

39. The Peace Corps did not consider the resources available at the specific location where Plaintiff was supposed to serve, nor the job duties of Plaintiff's offered position, in order to conduct a compliant individualized assessment.

40. The Peace Corps did not consider any alternative assignments as a last-resort accommodation.

41. The Peace Corps did not perform any compliant, individualized analysis of whether Plaintiff's conditions would create a direct threat to herself or others, under 29 C.F.R. §1630.2(r).

42. Rather, the Peace Corps summarily denied Plaintiff opportunities based upon her disabilities, record of disabilities, and perceived disabilities, effectively determining that Plaintiff could not be accommodated in any position in any location in the world, without ever having

undertaken any consideration of facts that could support such a determination.

43. Plaintiff Doe's experience is illustrative of how the Peace Corps' medical screening process discriminates against people with disabilities, including people with records of disabilities and perceived disabilities.

**CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure ("FRCP") on behalf of the following defined Class:

**Proposed Class:**

All Peace Corps invitees from August 2, 2020[2] until the resolution of this complaint who were denied Volunteer positions in the Peace Corps because the Peace Corps denied them medical clearance for service due to their disability, record of a disability, or perceived disability.

45. Numerosity: The Proposed Class is so numerous that joinder of all members is impracticable.

46. According to the Peace Corps' publicly available data, as of September 30, 2020, the Peace Corps had 2,187 active invitees and received 3,548 new Volunteer applications between April 1, 2020 and September 30, 2020. *See* https://s3.amazonaws.com/files.peacecorps.gov/documents/inspector-general/Semiannual_Report_to_Congress_Apr_2020-Sep_2020.pdf (last visited May 18, 2021). Because there are thousands of invitees each year, generally, Plaintiff believes, and on that basis alleges, that during the relevant time period, there are at lea st hundreds of individuals who are geographically dispersed around the country and the world and who satisfy the definition of the Proposed Class. For example, based on the Peace Corps Office of Inspector General's analysis of the medical screening process in 2008, approximately 450 people were medically disqualified in 2006. *See*

[2] Plaintiff will seek to certify a class commencing with the earliest possible date. This date is 45 days prior to Plaintiff's informal EEO exhaustion with the Peace Corps. If it is determined that the class period can extend prior to this date, then Plaintiff incorporates that earlier date here by reference.

https://files.peacecorps.gov/multimedia/pdf/policies/PC_Medical_Clearance_System_Report_IG-08-08-E.pdf (last visited October 1, 2021).

47. Plaintiff anticipates that the class will grow over time because, upon information and belief, the Peace Corps continues to maintain the challenged pattern, practice, and/or policy of failing to conduct individualized assessments and consider reasonable accommodations and/or perform compliant undue hardship/direct threat analyses for invitees with disabilities, records of disabilities, or perceived disabilities.

48. Typicality: Plaintiff Doe's claims are typical of the members of the Proposed Class. Plaintiff Doe was an invitee of the Peace Corps with an actual disability and record of disability to whom the Peace Corps denied medical clearance and, consequently, denied a Volunteer position without conducting an individualized assessment or considering reasonable accommodations, or conducting a compliant undue hardship/direct threat analysis.

49. Plaintiff Doe's claims are typical of the claims of the proposed class in the following ways: (1) Plaintiff Doe is a member of the proposed class; (2) Plaintiff Doe's claims arise from the same policies, procedures, practices and course of conduct on the part of Defendant; (3) Plaintiff Doe's claims are based on the same legal and remedial theories as those of the proposed class and involve similar factual circumstances; (4) the injuries suffered by Plaintiff Doe are similar to the injuries suffered by the proposed class members; and (5) the relief sought herein will benefit Plaintiff Doe and all class members and future invitees alike.

50. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of invitees for Volunteer positions, where individuals lack the financial resources or incentives to vigorously prosecute separate lawsuits in federal court against a large governmental defendant and fear retaliation and "blackballing." Prosecuting dozens of identical individual lawsuits across the country on behalf of individuals dispersed around the world does not promote judicial efficiency, equity, or consistency in judicial results, when there is a single pattern, practice, and/or policy being challenged: the Peace Corps' failure to conduct individualized assessments and consider reasonable accommodations for invitees with disabilities.

51. Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Class, has no conflicts with the proposed Class's interests, and has retained counsel experienced in complex class litigation, including but not limited to class disability discrimination litigation against federal agencies.

52. Commonality: Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class, including but not limited to:

a. Whether the Peace Corps has a policy of not conducting adequate individualized assessments;

b. Whether the Peace Corps has a policy of not engaging in an adequate interactive process;

c. Whether the Peace Corps fails to consider reasonable accommodations;

d. Whether the Peace Corps has a policy of not considering potential reasonable accommodations according to site location;

e. Whether the Peace Corps conducts a compliant undue hardship analysis as to any reasonable accommodations;

f. Whether the Peace Corps conducts a compliant direct threat analysis as to any disabilities, perceived disabilities, and records of disabilities;

g. Whether the Peace Corps' failure to conduct individualized assessments, engage in the interactive process, consider reasonable accommodations, and/or conduct compliant undue hardship/direct threat analyses resulted in the rescission of invitees' invitations to become Volunteers;

h. Whether the Peace Corps' failure to conduct individualized assessments, engage in the interactive process, consider reasonable accommodations, and/or conduct compliant undue hardship/direct threat analyses violates, or results in a violation of, Section 504;

i. Whether the Peace Corps, by their actions and omissions alleged herein, have engaged in a policy, pattern and/or practice of discrimination against Plaintiff

and the putative class members in violation of Section 504;

j. Whether the Plaintiff Doe and the putative class members have been injured; and

k. Whether the Plaintiff and the members of the putative class are entitled to declaratory and/or injunctive relief, and the nature of such relief.

53. This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because the Peace Corps has acted or refused to act on grounds that apply generally to the proposed Class, including but not limited to maintaining a uniform pattern, practice, and/or policy of failing to conduct individualized assessments, consider reasonable accommodations, and/or conduct compliant direct threat and undue hardship analyses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

54. Class certification is also appropriate because questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Peace Corps' uniform pattern, practice, and/or policy of failing to conduct individualized assessments and consider reasonable accommodations has stymied invitees' careers and caused invitees emotional and/or physical harm. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about the Peace Corps' failure to conduct individualized assessments, consider reasonable accommodations, and conduct compliant undue hardship/direct threat analyses.

55. Plaintiff Doe may send notice to all members of the Proposed Class to the extent required by Rule 23(c)(2)(A), as directed by the Court. The names, email addresses, mailing addresses, and telephone numbers of the members of the Proposed Class are available from the Peace Corps because class members are current and former Peace Corps invitees.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING**

56. A Peace Corps Volunteer, Trainee, or Applicant alleging discrimination by the Agency may file a civil action in the appropriate U.S. District Court if, after one hundred eighty

(180) calendar days from the date of filing a complaint with the agency, there has been no final agency action. 45 C.F.R. § 1225.21.

57. On August 5, 2020, Ms. Doe received notice that her appeal had been denied and her candidacy for the Peace Corps position was being terminated.

58. On September 16, 2020, Plaintiff timely filed an informal complaint with Peace Corps EEO,[3] alleging individual and class claims of disability discrimination.

59. On November 23, 2020, Plaintiff timely filed a formal complaint with Peace Corps EEO, alleging individual and class claims of disability discrimination.

60. On November 25, 2020, Peace Corps EEO informed Plaintiff of its opinion that the information she provided was insufficient to establish a class claim under 45 C.F.R. § 1225. Peace Corps EEO requested additional information in support of Plaintiff's class allegations.

61. On November 30, 2020, Plaintiff timely submitted additional information to Peace Corps EEO supporting her class allegations.

62. On December 23, 2020, John Burden, Director of the Peace Corps Office of Civil Rights and Diversity ("OCRD"), notified Plaintiff that OCRD still did not consider her class allegations sufficient under 45 C.F.R. § 1225.13(a)(7).

63. On February 8, 2021, Peace Corps EEO accepted Plaintiff's individual complaint for investigation and dismissed Plaintiff's class allegations. On February 8, 2020, Plaintiff, with assistance of counsel, indicated that she disagreed with the dismissal of her class allegations.

64. On February 25, 2021, Peace Corps EEO referred Plaintiff's class claims to the Director's Office and asked Plaintiff to supply additional information to support her class allegations.

65. On March 8, 2021, Plaintiff submitted supplemental documentation and legal arguments to Peace Corps EEO in support of her class allegations.

66. On April 29, 2021, Carl Sosebee, Senior Advisor to the Director of OCRD, informed Plaintiff of the Peace Corps' decision to deny Plaintiff's class claim. On May 4, 2021,

[3] Throughout, "Peace Corps EEO" refers both to the Peace Corps and the Peace Corps Office of Civil Rights and Diversity.

Conor Tong, a representative of Peace Corps EEO, confirmed that Mr. Sosebee's April 29 letter was not a final agency decision because Plaintiff's individual claims were accepted for investigation.

67. More than 180 days have elapsed since Plaintiff filed her formal complaint, including individual and class allegations, with Peace Corps EEO.

68. No final agency action has been taken with respect to Plaintiff's administrative complaint.

69. No external appeal has been filed with respect to Plaintiff's administrative complaint alleging violations of the Rehabilitation Act against Defendant.

70. Accordingly, Plaintiff has timely exhausted her administrative remedies.

## FIRST CLAIM FOR RELIEF
## Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)
## Disability Discrimination

71. Plaintiff Doe, on behalf of herself and the proposed Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

72. The Peace Corps is a federal agency and as such is subject to Section 504 of the Rehabilitation Act of 1973 and the federal regulations promulgated thereunder. Section 504 provides that a qualified individual with a disability may not, solely on the basis of their disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination in any federal program or activity conducted by an Executive Agency, such as the Peace Corps. 29 U.S.C. § 794(a); *accord* 45 C.F.R. § 1214.130(a).

73. The Peace Corps unlawfully discriminates against invitees based on disability by imposing a greater burden of disclosure, inquiry and scrutiny on invitees with physical or mental health conditions through its medical clearance process. The Health History Form requires applicants to respond to a wide-ranging list of overly broad and intrusive medical questions. Once invitees have identified medical or mental health issues, they are further subjected to scrutiny through follow-up inquiries and requests for information.

///

74. The Peace Corps discriminates against invitees based on disability by taking adverse action against them, even when they are qualified for service, without individualized consideration or a compliant interactive dialogue. The Peace Corps applies guidelines which call for disqualification based on factors that are not tied to an applicant's ability to serve, with or without accommodation. Thus, the Peace Corps' medical clearance process screens out or tends to screen out individuals based on disability, without adequately assessing whether invitees are qualified with or without accommodation. *See, e.g.*, *Mendez v. Gearan*, 956 F. Supp. 1520, 1527-28 (N.D. Cal. 1997); *In re Ettema*, Peace Corps, Final Agency Decision No. PCV-11-04 (2012) (finding discrimination where Peace Corps relied on medical guidelines without an individualized assessment of the applicant's circumstances).

75. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiff prays for judgment as set forth below.

**ALLEGATIONS SUPPORTING DECLARATORY RELIEF**

76. Plaintiff Doe, on behalf of herself and the proposed Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

77. An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe, that Defendant denies that the Peace Corps' medical clearance and selection process fails to comply with Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

78. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as set forth below on behalf of herself and the class members.

A. An order certifying this case as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) appointing Plaintiff as Class Representative of the Class and her attorneys as Counsel for the Class.

///

B. Declare that Defendant's policies, procedures and practices regarding with a disability, regarded as having a disability, or with a record of a disability, violate the rights of Plaintiff and Class Members, under Section 504, by failing to provide for individualized consideration, an interactive dialogue, and consideration of reasonable accommodations.

C. Issue preliminary and permanent injunctions pursuant to Section 504 that enjoin the Defendant, her successors in office, agents, employees and assigns, and all persons acting in concert with them, to promulgate compliant policies, procedures and practices, including but not limited to,

   i. Conducting non-discriminatory medical clearances, based upon individualized consideration encompassing a Rehabilitation Act-compliant interactive dialogue;

   ii. Considering reasonable accommodations for invitees with disabilities;

   iii. Reversal of adverse decisions regarding their medical clearances except where the adverse decision is justified by law, and reinstatement of invitations to the Peace Corps to those denied improperly;

   iv. Changes to the Peace Corps' policies and procedures in inquiring about and assessing medical information; and

   v. Other injunctive and non-monetary restitutionary relief sufficient to comply with the Rehabilitation Act.

D. Order that Defendant's compliance with Section 504 be monitored by Class Counsel in conjunction with independent experts, to be compensated by Defendant.

E. Retain jurisdiction of this case until Defendant has complied with the orders of this Court.

F. Award Plaintiffs' attorneys' fees and legal costs.

///

G. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Doe, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated: October 12, 2021

Respectfully submitted,

Bryan J. Schwartz
Cassidy Clark
BRYAN SCHWARTZ LAW

By: */s/* Bryan J. Schwartz
*Attorneys for Plaintiff*

Dated: October 12, 2021

Jinny Kim
Jared Odessky
LEGAL AID AT WORK

By: */s/* Jinny Kim
*Attorneys for Plaintiff*