1    BRIAN M. BOYNTON
         Acting Assistant Attorney General
2    CARLOTTA WELLS
         Assistant Branch Director
3    LISA ZEIDNER MARCUS (N.Y. Bar 4461679)
         Senior Counsel
4    UNITED STATES DEPARTMENT OF JUSTICE
         Civil Division, Federal Programs Branch
5        1100 L St., NW, Twelfth Floor
         Washington, DC 20530
6        Tel: (202) 514-3336
         Facsimile: (202) 616-8470
7        lisa.marcus@usdoj.gov

8    Counsel for Defendant

9

10                    UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
11                     SAN FRANCISCO DIVISION

12   JANE DOE, individually, and on behalf of all      )   Case No. 3:21-cv-04007-LB
     others similarly situated,                        )
13                                                     )   **Defendant's Notice of Motion and**
                            Plaintiff,                  )   **Motion to Dismiss the First Amended**
14                                                     )   **Complaint or, in the Alternative, to**
                   v.                                   )   **Transfer to the U.S. District Court for**
15                                                     )   **the District of Columbia; and to Dismiss**
     CAROL SPAHN, in her official capacity as          )   **or Strike the Class Claims**
16   Acting Director of the Peace Corps,               )
                                                       )
17                          Defendant.                  )   **Noticed Hearing**
                                                       )   Date:  Thursday, December 2, 2021
18                                                     )   Time: 9:30 a.m.
                                                       )   Judge: Hon. Laurel Beeler
19   _____

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Table of Exhibits** ........................................................................................................ ii

**Table of Authorities** .................................................................................................... iii

**Notice of Motion and Motion** ..................................................................................... 1

**Relief Sought by Defendant** ........................................................................................ 1

**Memorandum of Points and Authorities** .................................................................. 1

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III. STATUTORY AND REGULATORY BACKGROUND ................................... 2

    A.   The Peace Corps Act and Regulations ...................................................... 2

    B.   The Rehabilitation Act § 504 .................................................................... 4

IV.  STATEMENT OF RELEVANT FACTS ............................................................ 4

V.   LEGAL STANDARDS ......................................................................................... 6

VI.  ARGUMENT ........................................................................................................ 7

    A.   The Court Should Dismiss or Transfer the Complaint for Improper Venue ................... 7

    B.   Alternatively, the Court Should Transfer This Case to the U.S. District Court for the District of Columbia for the Convenience of Parties and Witnesses ....................... 12

    C.   Plaintiff's Class Claims Are Legally Deficient. ......................................... 15

        1.   The Complaint Lacks Sufficient Factual Allegations Supporting the Class Claims .......................... 16

        2.   Plaintiff Cannot Show Commonality or Typicality ................................... 19

VII. CONCLUSION .....................................................................................................22

# TABLE OF EXHIBITS

Exhibit A:      Declaration of Lisa Zeidner Marcus, Senior Counsel, U.S. Department of Justice, Civil Division, Federal Programs Branch

Exhibit A-1:    February 25, 2020, Initial Medical Non-Clearance Decision

Exhibit A-2:    August 5, 2020, Decision of Peace Corps Pre-service Review Board

Exhibit A-3:    United States Courts, U.S. District Courts–Civil Federal Judicial Caseload Statistics Table C-1 (Civil Cases Filed, Terminated, and Pending, by Jurisdiction—During the 12-Month Period Ending June 30, 2021)

Exhibit A-4:    United States Courts, U.S. District Courts–Civil Federal Judicial Caseload Statistics Table C-5 (Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending June 30, 2021)

Exhibit B:      Declaration of Denise Miles, PsyD, psychologist, Peace Corps (regarding venue)

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Cases</u>**

3

*Alliance for Multilingual Multicultural Education v. Garcia,*
No. 11cv0215, 2011 WL 2532478 (N.D. Cal. June 24, 2011) .....................................................9

4

*Ashcroft v. Iqbal,*
5      556 U.S. 662 (2009)...................................................................................................7, 16, 19

6      *Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007)...................................................................................................6, 7, 16

7

*Bride v. Snap Inc.,*
8      No. 21cv3473, 2021 WL 3493662 (N.D. Cal. Aug. 9, 2021).................................................12, 13

9      *Broadway National Bank v. Plano Encryption Technologies, LLC,*
173 F. Supp. 3d 469 (W.D. Tex. 2016)..........................................................................12

10

*Bush v. Vaco Technology Services, LLC,*
11     No. 17cv5605, 2019 WL 3290654 (N.D. Cal. July 22, 2019).......................................................19

12     *Byrd v. Masonite Corporation,*
No. 16cv35, 2016 WL 756523 (C.D. Cal. Feb. 26, 2016).........................................................19

13

*Career Counseling, Inc. v. Amerifactors Financial Group, LLC,*
14     No. 16cv3013, 2017 WL 4269458 (D.S.C. Sept. 26, 2017)........................................................18

15     *Carolina Casualty Company v. Data Broadcasting Corporation,*
158 F. Supp. 2d 1044 (N.D. Cal. 2001) .......................................................................13

16

*Chesapeake Climate Action Network v. Export-Import Bank of the United States,*
17     No. 13cv3532, 2013 WL 6057824 (N.D. Cal. Nov. 15, 2013)......................................................15

18     *Chess v. Romine,*
No. 18cv5098, 2018 WL 5794526 (N.D. Cal. Nov. 2, 2018).......................................................14

19

*Citizens United v. Schneiderman,*
20     882 F.3d 374 (2d Cir. 2018)...................................................................................18

21     *Concha v. London,*
62 F.3d 1493 (9th Cir. 1995) ...................................................................................18

22

*Cottman Transmission Systems, Inc. v. Martino,*
23     36 F.3d 291 (3d Cir. 1994).....................................................................................11

24     *Crist v. Republic of Turkey,*
995 F. Supp. 5 (D.D.C. 1998) .................................................................................18

25

*Davoll v. Webb,*
26     160 F.R.D. 142 (D. Colo. 1995) ...............................................................................21

27     *Doe 1 v. AOL LLC,*
552 F.3d 1077 (9th Cir. 2009) .................................................................................6

28

*Ecological Rights Foundation v. United States Environmental Protection Agency,*
No. 19cv4242, 2019 WL 5295124 (N.D. Cal. Oct. 18, 2019) .......................................14

*General Telephone Company of Southwest v. Falcon,*
457 U.S. 147 (1982)...................................................................................................15

*General Telephone Company of the Northwest v.*
*Equal Employment Opportunity Commission,*
446 U.S. 318 (1980)...................................................................................................19

*Gulf Insurance Company v. Glasbrenner,*
417 F.3d 353 (2d Cir. 2005)......................................................................................11

*Hamad v. Gates,*
No. 10cv591, 2010 WL 4511142 (W.D. Wash. Nov. 2, 2010) ....................................11

*Hoffman v. Blaski,*
363 U.S. 335 (1960)...................................................................................................12

*Hohider v. United Parcel Service, Inc.,*
574 F.3d 169 (3d Cir. 2009).......................................................................................21

*Jamba Juice Company v. Jamba Group, Inc.,*
No. 01cv4846, 2002 WL 1034040 (N.D. Cal. May 15, 2002) ....................................11

*Jenkins Brick Company v. Bremer,*
321 F.3d 1366 (11th Cir. 2003) ...................................................................................9

*Kamm v. California City Development Company,*
509 F.2d 205 (9th Cir. 1975) .....................................................................................15

*Kennedy v. Unumprovident Corporation,*
50 Fed. App'x 354 (9th Cir. 2002) .............................................................................15

*King v. Russell,*
963 F.2d 1301 (9th Cir. 1992) .....................................................................................6

*Kings County Economic Community Development Association v. Hardin,*
333 F. Supp. 1302 (N.D. Cal. 1971) ............................................................................8

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005) .....................................................................................7

*Knight v. Corporation for National and Community Service,*
No. 03cv2433, 2004 WL 2415079 (E.D. Pa. Oct. 28, 2004)......................................11

*Leroy v. Great Western United Corporation,*
443 U.S. 173 (1979)....................................................................................................8

*Loeb v. Bank of America,*
254 F. Supp. 2d 581 (E.D. Pa. 2003) ........................................................................12

*Lou v. Belzberg,*
834 F.2d 730 (9th Cir. 1987) .....................................................................................13

*Mann Bracken, LLP v. Executive Risk Indemnity, Inc.*,
No. 15cv1406, 2015 WL 5721632 (D. Md. Sept. 28, 2015) ....................................18

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985) ..................................................15, 16, 20, 21

*Medbox Incorporated v. Kaplan*,
No. 13cv949, 2013 WL 6094577 (D. Ariz. Nov. 20, 2013) ................................10

*Mendez v. Gearan*,
947 F. Supp. 1364 (N.D. Cal. 1996) ........................................................20

*Miller v. Amazon.com Inc.*,
No. 17cv3488, 2018 WL 6421868 (N.D. Cal. Dec. 6, 2018) ..........................16, 18

*Miranda v. Coach, Inc.*,
No. 14cv2031, 2015 WL 636373 (N.D. Cal. Feb. 13, 2015) ..............................17

*National Casualty Company v. Burns & Wilcox Limited*,
No. 19cv4854, 2020 WL 4039119 (D. Ariz. July 17, 2020) ..............................11

*Olberding v. Illinois Cent. R. Co.*,
346 U.S. 338 (1953) ..........................................................................8

*Ovieda v. Sodexo Operations, LLC*,
No. 12cv1750, 2012 WL 1627237 (C.D. Cal. May 7, 2012) ..............................18

*Pacific Car and Foundry Company v. Pence*,
403 F.2d 949 (9th Cir. 1968) ................................................................13

*Pareto v. Federal Deposit Insurance Corporation*,
139 F.3d 696 (9th Cir. 1998) ..................................................................6

*Patten v. Hancock*,
No. 15cv4022, 2016 WL 693233 (N.D. Cal. Feb. 22, 2016) ..............................13

*Piedmont Label Company v. Sun Garden Packing Company*,
598 F.2d 491 (9th Cir. 1979) ..................................................................6

*Remley v. Lockheed Martin Corporation*,
No. 00cv2495, 2001 WL 681257 (N.D. Cal. June 4, 2001) ............................9, 10

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................16

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ....................................................9, 11

*Semenko v. Wendy's International, Inc.*,
No. 12cv836, 2013 WL 1568407 (W.D. Pa. 2013) ........................................21

*Shalaby v. Newell Rubbermaid, Inc.*,
No. 06cv7026, 2007 WL 3144357 (N.D. Oct. 24, Cal. 2007) ............................13

*Shann v. Durham School Services, L.P.*,
182 F. Supp. 3d 1044 (C.D. Cal. 2016) ...................................................................19

*Sidney-Vinstein v. A.H. Robins Company*,
697 F.2d 880 (9th Cir. 1983) .................................................................................7

*Sokol v. New United Motor Manufacturing, Inc.*,
No. 97cv4211, 1999 WL 1136683 (N.D. Cal. Sept. 20, 1999).................................21

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ................................................................................18

*Sutain v. Shapiro and Lieberman*,
678 F.2d 115 (9th Cir. 1982) ................................................................................11

*Texas Department of Housing and Community Affairs v.*
*Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015)............................................................................................17

*Thomas v. Twentieth Century Fox Film Corporation*,
No. 21cv2720, 2021 WL 2434032 (N.D. Cal. June 15, 2021) ....................................15

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .....................................................................7

*Travelers Property Casualty Company of America v. Hume Lake Christian Camps, Inc.*,
No. 17cv1600, 2018 WL 280025 (S.D. Cal. Jan. 3, 2018) ........................................11

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................................................................................7

*United Tactical Systems LLC v. Real Action Paintball, Inc.*,
108 F. Supp. 3d 733 (N.D. Cal. 2015) ........................................................................9

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)......................................................................................12, 13

*Western Digital Technologies, Inc. v. Board of Regents of the University of Texas System*,
No. 10cv3595, 2011 WL 97785 (N.D. Cal. Jan. 12, 2011) ........................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)............................................................................................19

*Walters v. Famous Transports, Inc.*,
488 F. Supp. 3d 930 (N.D. Cal. 2020) .................................................................12, 13

*Weddle v. Skidmore College*,
No. 97cv5200, 1997 WL 473964 (S.D.N.Y. Aug. 20, 1997) ......................................11

*Williams v. United States*,
No. 01cv0024, 2001 WL 1352885 (N.D. Cal. Oct. 23, 2001)......................................8

*Zukle v. Regents of the University of California*,
166 F.3d 1041 (9th Cir. 1999) ...........................................................................4, 20

**Statutes**

22 U.S.C. §§ 2501–2523 ......................................................................................2

22 U.S.C. § 2504 ............................................................................................3, 3–4

22 U.S.C. § 2504a ................................................................................................3–4

28 U.S.C. § 1391 .......................................................................................... *passim*

28 U.S.C. § 1404 ......................................................................................1, 6, 12

28 U.S.C. § 1406 ...................................................................................1, 6, 8, 12

29 U.S.C. § 794 ........................................................................................2, 4, 5

International Security and Development Cooperation Act of 1981,
Pub. L. No. 97-113, § 601, 95 Stat. 1519, 1540–42 (Dec. 29, 1981) ...............................3

The Peace Corps Act,
Pub. L. No. 87-293, 75 Stat. 612 (Sept. 22, 1961)...............................................2

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ..........................................................1, 6, 12

Federal Rule of Civil Procedure 12(b)(6) ..........................................................1, 6, 7

Federal Rule of Civil Procedure 12(f) ...............................................................1, 7

Federal Rule of Civil Procedure 23 .........................................................6, 15, 16, 19

**Regulations**

22 C.F.R. § 305.4 ..............................................................................................3, 20

45 C.F.R. § 1225 .................................................................................................5

45 C.F.R. § 1225.21 (2020) ................................................................................5

**Other Authorities**

15 Wright & Miller, Federal Practice & Procedure § 3848 (4th ed. 2018) ...................................13

Executive Order No. 10,924, 26 Fed. Reg. 1,789 (Mar. 2, 1961)...............................................2, 3

Executive Order No. 11,603, 36 Fed. Reg. 12,675 (July 3, 1971)................................................3

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Thursday, December 2, 2021, at 9:30am, or as soon thereafter as the matter may be heard, defendant Carol Spahn, Acting Director of the Peace Corps, by and through undersigned counsel, will appear before the Honorable Laurel Beeler and move (1) to dismiss plaintiff's First Amended Complaint for improper venue pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3) or to transfer this case to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1406(a); or, in the alternative, (2) to transfer this case to the United States District Court for the District of Columbia under 28 U.S.C. § 1404(a). Additionally, defendant will move to dismiss pursuant to Rule 12(b)(6) or to strike pursuant to Rule 12(f) plaintiff's class claims. Should the Court dismiss this matter for improper venue or transfer it to the District of Columbia, this Court need not reach defendant's Rule 12(b)(6) and 12(f) arguments, and can transfer those motions along with this case. Defendant's motion is based on this notice, the points and authorities in support of this motion, the exhibits thereto, on such oral argument as this Court may permit, and other good cause.

## RELIEF SOUGHT BY DEFENDANT

Defendant seeks dismissal of the First Amended Complaint for improper venue, or, alternatively, to transfer this case to the U.S. District Court for the District of Columbia. Additionally, defendant seeks dismissal or to strike plaintiff's class claims.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Jane Doe[1] applied to serve as a Peace Corps volunteer in North Macedonia. The Peace Corps provisionally accepted her for service as an invitee, but then—after reviewing her medical history and documentation regarding her mental health conditions and medications— found her medically not qualified for service. She administratively appealed that decision to the Peace Corps Pre-Service Review Board, which upheld the medical non-clearance decision.

Plaintiff now challenges the Peace Corps decision by arguing that it violates § 504 of the Rehabilitation Act of 1973, which prohibits federal programs from excluding an individual from

---

[1] On October 20, 2021, this Court granted plaintiff's motion to proceed using the pseudonym "Jane Doe." ECF No. 29.

participation "solely by reason of her or his disability." 29 U.S.C. § 794. She also purports to represent a putative class of "similarly situated" individuals.

Venue in this district is improper because neither plaintiff nor the defendant resides here, and none of the events giving rise to plaintiff's claims occurred here. Defendant thus moves to dismiss plaintiff's First Amended Complaint ("FAC") on venue grounds, or alternatively to transfer to the District of Columbia, where this case could have originally been brought. Defendant also moves to dismiss plaintiff's class claims because plaintiff fails to plausibly allege such claims. As discussed further below, the Court should grant defendant's motion.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Whether venue properly lies in this district; whether the case should be transferred to the District of Columbia; whether plaintiff has stated a claim with respect to her putative class claims.

## III.   STATUTORY AND REGULATORY BACKGROUND

### A.   The Peace Corps Act and Regulations

President Kennedy established the Peace Corps in March 1961 through Executive Order 10,924.[2] Six months later, Congress passed the Peace Corps Act, legislatively establishing the agency. Pub. L. No. 87-293, 75 Stat. 612, 612–25 (Sept. 22, 1961) (codified as amended at 22 U.S.C. §§ 2501–2523). The Act

> declares that it is the policy of the United States and the purpose of this chapter to promote world peace and friendship through a Peace Corps, which shall make available to interested countries and areas men and women of the United States qualified for service abroad and willing to serve, under conditions of hardship if necessary, to help the peoples of such countries and areas in meeting their needs for trained manpower, particularly in meeting the basic needs of those living in the poorest areas of such countries, and to help promote a better understanding of the American people on the part of the peoples served and a better understanding of other peoples on the part of the American people.

22 U.S.C. § 2501. The Peace Corps was originally organized as an agency within the Department

---

[2] President Kennedy signed the Executive Order on March 1, 1961, and it was printed in the Federal Register the next day. *See* Exec. Order No. 10,924, 26 Fed. Reg. 1,789 (Mar. 2, 1961), *available at* https://www.govinfo.gov/content/pkg/FR-1961-03-02/pdf/FR-1961-03-02.pdf.

of State.[3] *See* Exec. Order No. 10,924 § 1, 26 Fed. Reg. at 1,789. It became an independent federal agency in December 1981. International Security and Development Cooperation Act of 1981, Pub. L. No. 97-113, § 601, 95 Stat. 1519, 1540–42 (Dec. 29, 1981).

Under the Peace Corps Act, the President is authorized to "enroll in the Peace Corps for service abroad qualified citizens and nationals of the United States," referred to as "volunteers," and to set the terms and conditions for their enrollment and service. 22 U.S.C. § 2504(a). By statute, "volunteers shall not be deemed officers or employees or otherwise in the service or employment of, or holding office under, the United States for any purpose." *Id.* Volunteers serve "at the pleasure of the President." *Id.* § 2504(f).

To enroll as a Peace Corps volunteer, an applicant must be medically qualified. 22 C.F.R. § 305.4(a). Peace Corps regulations set forth the standard for medical eligibility:

> (1) The Applicant, with or without reasonable accommodation, removal of architectural, communication or transportation barriers, or the provision of auxiliary aids or services, must have the physical and mental capacity required to meet the essential eligibility requirements for a Volunteer. In this context, the essential eligibility requirements for a Volunteer include, without limitation, the capability to:
>
> > (i) Live and work independently in an isolated location overseas at the same socio-economic level and in similar conditions as members of the community to which the Applicant is assigned;
> >
> > (ii) Perform the job to which the Applicant is assigned; and
> >
> > (iii) Complete a specified tour of service without undue disruption.
>
> (2) The Peace Corps must be capable of providing the Applicant with such health care as the Peace Corps deems to be necessary or appropriate.
>
> (3) The Applicant must not pose a direct threat (as defined in [22 C.F.R. § 305.4(a)]).

*Id.* It is Peace Corps policy to conduct an "individualized assessment" to determine whether each applicant meets these requirements and is "medically qualified" to serve. *Id.* § 305.4(b).

The Peace Corps provides health care directly to Peace Corps volunteers during their overseas service, through medical officers employed by Peace Corps at each overseas post. 22

---

[3] Later, from 1971–1981, the Peace Corps was organized under a separate umbrella agency called ACTION, which also housed federal domestic volunteer programs including the AmeriCorps Volunteers in Service to America (VISTA) program. *See* Exec. Order No. 11,603 § 101, 36 Fed. Reg. 12,675, 12,675 (July 3, 1971), *available at* https://www.govinfo.gov/content/pkg/FR-1971-07-03/pdf/FR-1971-07-03.pdf.

U.S.C. § 2504(e); *id.* § 2504a.

### B.      The Rehabilitation Act § 504

Section 504 of the Rehabilitation Act provides that a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under … any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).

To establish a *prima facie* claim for discrimination under § 504, a plaintiff must show that: (1) she is "disabled" as that term is defined in § 504; (2) she was "otherwise qualified" for benefits she was denied; and (3) she was discriminated against "solely because of her disability." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

## IV.      STATEMENT OF RELEVANT FACTS

Plaintiff alleges the following facts. In February 2020, she was provisionally offered a Peace Corps volunteer position in North Macedonia. FAC ¶¶ 3, 27. As part of the application process, she filled out a health history form disclosing that she had a history of major depressive disorder and generalized anxiety disorder and was prescribed medications for her mental health conditions. *Id.* ¶¶ 8, 26. On February 20, 2020, a pre-service nurse from the Peace Corps Medical Office requested additional information from her regarding her mental health conditions. *Id.* ¶ 28. Plaintiff provided this information on February 24, 2020. *Id.*

On February 25, 2020, the Medical Office notified plaintiff that it could not medically clear her for service as a Peace Corps volunteer, *id.* ¶ 30, on the grounds that

> you recently had a change in psychiatric medications, are prescribed two medications that cannot be supported in service (Lamotrigine and Seroquel) and that you are currently engaged in treatment. It is likely, to a reasonable degree of medical certainty, the potentially stressful environment of Peace Corps would aggravate, exacerbate, accelerate, or permanently worsen your pre-existing medical concerns, which would lead to your being unable to complete a tour of 27 months without unreasonable disruption of service.

Ex. A-1 at 1. The notice explained that "the Peace Corps does not have blanket rules excluding applicants with particular conditions and your medical condition has been assessed individually by staff in the Office of Medical Services." *Id.*

Following an exchange of correspondence, plaintiff appealed that decision on March 28,

2020. *Id.* ¶ 34. On August 5, 2020, the Peace Corps notified her that her appeal had been denied by the Pre-service Review Board ("PRB"). *Id.* ¶ 37; Ex. A-2 at 1. Based on materials submitted by plaintiff in support of her application and appeal, and on careful consideration of those materials "in the context of [her] overall medical history and physical findings[,]" the PRB upheld the initial decision for "the same reasons outlined in the initial medical non-clearance letter[.]" Ex. A-2 at 1.[4]

Plaintiff administratively filed a formal complaint of discrimination, challenging the PRB's decision, on November 23, 2020. FAC ¶ 59. Thereafter, the Peace Corps Office of Civil Rights and Diversity notified plaintiff that her class allegations were insufficient to establish a class claim under the Peace Corps regulation, 45 C.F.R. § 1225. *Id.* ¶¶ 60–62, 66. However, the Peace Corps accepted plaintiff's individual complaint of discrimination for investigation. *Id.* ¶ 63.

After more than 180 days had elapsed without a final agency action following plaintiff's filing of her formal administrative complaint of discrimination, *see* FAC ¶ 67; 45 C.F.R. § 1225.21 (2020), plaintiff filed the instant suit on May 26, 2021. Compl. (ECF No. 1). Defendant moved to dismiss plaintiff's original complaint, ECF No. 22, and in response plaintiff filed a First Amended Complaint on October 12, 2021 (ECF No. 28).[5]

Like her original complaint, plaintiff's First Amended Complaint asserts disability discrimination in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). FAC ¶¶ 71–74. Plaintiff alleges that the Peace Corps engaged in no interactive process with her, FAC ¶ 30; considered no reasonable accommodations for her prior to denying her opportunities, *id.* ¶ 38; considered neither the resources available at the specific location where she was supposed to serve nor the job duties of her offered position, *id.* ¶ 39; considered no alternative assignments as a last-resort accommodation, *id.* ¶ 40; and performed no compliant, individualized analysis of

---

[4] Both the original medical non-clearance decision and the PRB's decision denying plaintiff's administrative appeal are incorporated by reference into the Complaint, *see* FAC ¶¶ 30, 37, and the Court may thus consider them without converting this motion into a motion for summary judgment. *See* § V, *infra*.

[5] Among other things, Plaintiff's First Amended Complaint deletes claims for compensatory damages and claims against Doe defendants, which had been included in the original complaint.

1   whether her conditions would create a direct threat to herself or others, *id.* ¶ 41. Instead, she

2   alleges, it summarily denied her opportunities based on her disabilities, record of disabilities, and

3   perceived disabilities. *Id.* ¶ *42*.

4          In addition to asserting individual claims of discrimination, plaintiff seeks to represent a

5   putative class under Federal Rule of Civil Procedure 23(b)(2). *Id.* ¶¶ 44–55. Plaintiff's putative

6   class is defined as "[a]ll Peace Corps invitees from August 2, 2020 until the resolution of this

7   complaint who were denied Volunteer positions in the Peace Corps because the Peace Corps

8   denied them medical clearance for service due to their disability, record of a disability, or

9   perceived disability." *Id.* ¶ 44.

10          The First Amended Complaint seeks declaratory and injunctive relief. *Id.* at 15–16

11   (Prayer For Relief).

12          Defendant Carol Spahn, in her official capacity as Acting Director of the Peace Corps,

13   now moves to dismiss and/or transfer and/or strike on the bases outlined below.

14   **V.      LEGAL STANDARDS**

15          A Rule 12(b)(3) motion challenges the complaint for improper venue. In considering

16   such a motion, "[the] pleadings need not be accepted as true, and facts outside the pleadings may

17   be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). The plaintiff bears the

18   burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598

19   F.2d 491, 496 (9th Cir. 1979). Should plaintiff fail to satisfy her burden to show proper venue in

20   this district, the court retains discretion whether to dismiss the case or to transfer the case to any

21   district where the case could initially have been brought. 28 U.S.C. § 1406(a); *see also King v.*

22   *Russell*, 963 F.2d 1301, 1304–05 (9th Cir. 1992). If the Court finds that venue properly lies here,

23   it may nonetheless transfer the case under 28 U.S.C. § 1404(a).

24          A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in a

25   complaint. The Complaint's material allegations must be taken as true and reasonable inferences

26   must be drawn in plaintiff's favor. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). However,

27   the pleading requirements in Rule 8(a)(2) "require[] more than labels and conclusions, and a

28   formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (citation omitted). Courts need not accept "'naked assertion[s]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In connection with a Rule 12(b)(6) motion, the Court may consider allegations in the complaint as well as documents that are "incorporated by reference." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

# VI.   ARGUMENT

## A.   The Court Should Dismiss or Transfer the Complaint for Improper Venue

Plaintiff asserts this Court is a proper venue under subsection 28 U.S.C. § 1391(e)(1)(B), stating that a substantial part of the events and omissions giving rise to her claims occurred in

this district. FAC ¶ 12. That is factually incorrect, and there is no basis for venue in this district. Thus, the Court should either dismiss the complaint or transfer the action to the proper venue: the United States District Court for the District of Columbia, where the defendant resides and where the underlying events substantially occurred.

Section 1391(e) sets forth the requirements for suits against the United States and its agencies. The statute provides that such actions "may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, … or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The venue requirement "is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given a 'liberal' construction." *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953). "The purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) (emphasis in original). Under 28 U.S.C. § 1406(a), a court "shall dismiss" a case that has been filed in the wrong district unless "the interest of justice" warrants transfer to a district where the case could have been brought.

The most direct path to establishing venue under § 1391(e)—the place of residence of plaintiff or defendant—does not exist here. The plaintiff resides not in this district, but in Chapel Hill, North Carolina. FAC ¶ 19. Nor does the Peace Corps reside in this district; it resides in Washington, D.C., where it maintains its principal office. *See Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin*, 333 F. Supp. 1302, 1304 (N.D. Cal. 1971) ("A public official is deemed to 'reside' for the purposes of § 1391(e) in the judicial district where he performs his official duties."); *see also id.* (rejecting argument that venue against a federal agency will lie wherever a subordinate departmental official resides); *Williams v. United States*, No. 01cv0024, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001) ("Venue does not lie in every judicial district where a federal agency has a regional office.").

Thus, the only potential basis for venue is 28 U.S.C. § 1391(e)(1)(B), under which plaintiff must show that "a substantial part of the events giving rise to the claim occurred" in this

district. 28 U.S.C. § 1391(e)(1)(B). "'To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1189 (N.D. Cal. 2017) (quoting in *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015)). "After 'identifying the alleged wrongful acts, the court must determine whether a substantial part of those acts took place in the forum.'" *Id.* (quoting *All. for Multilingual Multicultural Educ. v. Garcia*, No. 11cv0215, 2011 WL 2532478, at *7 (N.D. Cal. June 24, 2011)); *accord Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). "What constitutes a 'substantial part' is likely to be determined in light of the purpose of the venue statute: i.e., to protect the defendant from having to defend in an unreasonably burdensome forum." *Remley v. Lockheed Martin Corp.*, No. 00cv2495, 2001 WL 681257, at *3 (N.D. Cal. June 4, 2001) (quoting Federal Civil Procedure Before Trial ¶ 4:123 (2000)).

Here, plaintiff alleges that the Peace Corps improperly failed to medically clear her for service, failed to conduct an individualized assessment or consider reasonable accommodations, and summarily denied her opportunities to volunteer abroad. She also asserts class claims challenging similar alleged decisions made by the Peace Corps as to other applicants. All of these alleged acts or omissions took place at the Peace Corps' office in Washington, DC, not within this district. Ex. B (Declaration of Denise Miles, Psy.D.). The Peace Corps' Office of Health Services ("OHS"), located at Peace Corps' headquarters in Washington, DC, determines whether applicants are medically qualified for volunteer service. *Id.* ¶¶ 1, 2. Decisions whether to medically clear an applicant are made solely by officials within OHS. *Id.* ¶ 2. The Behavioral Health and Outreach Unit ("BHO") within OHS conducts pre-service assessments for applicants with behavioral health issues, and makes initial medical clearance decisions for such applicants. *Id.* BHO offices are also located at Peace Corps headquarters in Washington, DC.

All events and omissions relating to the decision not to medically clear Ms. Doe took place in Washington, DC: (1) the Peace Corps received health-related documentation and information from Ms. Doe through the Medical Applicant Exchange system (MAXx) portal, which is operated out of the Washington, DC metropolitan area. *Id.* ¶¶ 6, 17; (2) BHO

professional medical staff reviewed Ms. Doe's medical documentation, and made the initial

determination that Peace Corps could not grant Ms. Doe a medical clearance; that determination

was made through the BHO unit, located in Washington, D.C., *id.* ¶ 8; (3) a BHO psychologist in

Washington, DC, reviewed Ms. Doe's appeal documentation and prepared a recommendation for

the Pre-Service Review Board ("PSRB"); and (4) the PSRB's review of Ms. Doe's appeal and its

decision to uphold the initial non-clearance decision were all conducted in Washington, DC, *id.*

¶¶ 13, 15. None of these operative events took place in the Northern District of California.

Accordingly, venue under 28 U.S.C. § 1391(e)(1)(B) is not present here.

The facts alleged in the First Amended Complaint's venue-assertion paragraphs, FAC

¶¶ 12–18, bear no relevance to the proper venue determination because they neither gave rise to

plaintiff's discrimination claim nor comprised a substantial part of events that did. Notably, the

"venue" section of the First Amended Complaint alleges facts that appear nowhere else in the

First Amended Complaint, including: (1) the Peace Corps' maintenance of a recruiting office in

Oakland, California; (2) plaintiff's interactions with a "Peace Corps Advisor"[6] at the Career

Center at UC Berkley, (3) her communications with the recruiter, and (4) the events relating to

her application to serve as a volunteer, including her interview and invitation. *Id*. These alleged

facts did not give rise to plaintiff's Rehabilitation Act claim, which pertains to decisions by the

Peace Corps Office of Health Services[7] and the Peace Corps Pre-service Review Board, not the

Peace Corps' West Regional Recruiting Office or a Peace Corps recruiter. *See* FAC ¶¶ 28–43;

Ex. B.

Plaintiff's alleged "venue" facts highlight the Peace Corps' contacts with this district.

FAC ¶¶ 12–18. But "[t]he law specifies a different line of inquiry for personal jurisdiction

(minimum contacts) and venue (whether 'a substantial part of the events or omissions' occurred

in the forum state)." *Medbox Inc. v. Kaplan*, No. 13cv949, 2013 WL 6094577, at *3 (D. Ariz.

---

[6] Based on the description in the First Amended Complaint, which describes office hours held by a "Peace Corps Advisor" at UC Berkeley, it appears that Ms. Doe is referring to meeting with a Peace Corps recruiter. *See* FAC ¶¶ 14–15; Ex. B. at ¶ 18. Peace Corps recruiters are not involved in the Peace Corps' medical clearance decisions. *Id.*

[7] The Office of Health Services conducts the medical clearance process for invitees who are provisionally extended an invitation to serve in the Peace Corps. *See* Ex. B at 2. The First Amended Complaint refers to this office as the "Medical Office." *See, e.g.*, FAC ¶ 21.

Nov. 20, 2013). Thus, these factual allegations, which do not describe "events or omissions" giving rise to her § 504 claim, cannot properly be considered as part of the venue analysis. *See Remley*, 2001 WL 681257, at *3 ("The test for determining venue is not defendants' 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim." (quoting *Cottman Trans. Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Indeed, "'[i]t would be error … to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.'" *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. 19cv4854, 2020 WL 4039119, at *14 (D. Ariz. July 17, 2020) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356-57 (2d Cir. 2005)); accord *Travelers Prop. Cas. Co. of Am. v. Hume Lake Christian Camps, Inc.*, No. 17cv1600, 2018 WL 280025, at *8 (S.D. Cal. Jan. 3, 2018); *Hamad v. Gates*, No. 10cv591, 2010 WL 4511142, at *6 (W.D. Wash. Nov. 2, 2010).

Plaintiff contends that her mere receipt of the medical non-clearance decision at her former home in Berkeley, California, along with her appeal of that decision from her former home, help to establish venue in this district. *See* FAC ¶¶ 17, 18. They do not. Again, these events did not "give rise" to plaintiff's Rehabilitation Act claim. They are not "acts or omissions by the defendant[]." *Saravia*, 280 F. Supp. 3d at 1189; *Sutain v. Shapiro & Lieberman*, 678 F.2d 115, 117 (9th Cir. 1982) ("All the events about which the appellant complain[ed]" occurred in a different district, and therefore venue was not appropriate in California district); *W. Digital Techs., Inc. v. Bd. of Regents*, No. 10cv3595, 2011 WL 97785, at *6 (N.D. Cal. Jan. 12, 2011) ("[B]y referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff"); *Jamba Juice Co. v. Jamba Grp., Inc.*, No. 01cv4846, 2002 WL 1034040, at *2 (N.D. Cal. May 15, 2002) ("[P]laintiff must point to some events or omissions by *defendant* giving rise to its claim that occurred in this district." (emphasis added)).

And even if those allegations are considered, pursuant to the venue analysis they do not form a "substantial part" of the operative events. *See, e.g.*, *Weddle v. Skidmore Coll.*, No. 97cv5200, 1997 WL 473964, at *2 (S.D.N.Y. Aug. 20, 1997) (in § 504 case, official correspondence, including formal notification of academic probation and of academic

disqualification, sent to plaintiff's home were insufficient to show that a "substantial part of events" giving rise to claim occurred in that district). *Knight v. Corp. for Nat. & Cmty. Serv.*, No. 03cv2433, 2004 WL 2415079, at *6 (E.D. Pa. Oct. 28, 2004) (in discrimination case brought by AmeriCorps*VISTA volunteer, substantial part of events giving rise to claim did not occur in the filing forum because volunteer selection decision was made in a different district, and the position for which volunteer was applying was located in the other district); *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 479 (W.D. Tex. 2016) (receipt of cease-and-desist letter in district insufficient to show that a substantial part of the events giving rise to the claims have occurred in the district); *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (correspondence and telephone calls received by the plaintiff at his home in the district were "woefully insufficient" to establish venue, as these communications were merely incidental events with a tangential connection with the dispute).

Because plaintiff has not established that venue properly lies in this district, the Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3), or transfer it to the District of Columbia. *See* 28 U.S.C. § 1406(a).

### B.   Alternatively, the Court Should Transfer This Case to the U.S. District Court for the District of Columbia for the Convenience of Parties and Witnesses

Even if the Court were to decide that venue properly lies in this district, the Court should nonetheless transfer the case under 28 U.S.C. § 1404(a). Where another district bears greater relation to the defendant or the action exists than the district in which it was filed, § 1404(a) allows transfer to that district "[f]or the convenience of parties and witnesses, in the interest of justice." Assessing the appropriate venue depends on "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). As discussed above, the most appropriate venue is the District of Columbia, where the case could have been brought.

The Court has broad discretion in ruling on a motion to transfer. *Bride v. Snap Inc.*, No. 21cv3473, 2021 WL 3493662, at *1 (N.D. Cal. Aug. 9, 2021). The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a) is the requirement that the new forum be a

"district or division where [the case] might have been brought." 28 U.S.C. § 1404(a); *Van Dusen*, 376 U.S. at 616; *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 935 (N.D. Cal. 2020). Where the case "might have been brought" is determined by reference to 28 U.S.C. § 1391(e).

Plainly, this case could have been brought in the District of Columbia. All of the "events or omissions giving rise to the claim occurred" in Washington, DC. *See* 28 U.S.C. § 1391(e)(1)(B); Ex. B ¶¶ 2–17. And the defendant resides in Washington, DC. *See* 28 U.S.C. § 1391(e)(1)(A).

After determining whether the case could have been brought in the target district, courts weigh multiple factors to determine if transfer would serve the convenience of the parties and witnesses, and would be in the interests of justice. *Walters*, 488 F. Supp. 3d at 935–36; *Patten v. Hancock*, No. 15cv4022, 2016 WL 693233, at *1 (N.D. Cal. Feb. 22, 2016). Such factors include: "(1) the plaintiff's choice of forum; (2) the convenience of witnesses and the parties; (3) the familiarity of the forum with the applicable law; (4) the ease of access to evidence; and (5) the relative court congestion and time of trial in each forum." *Id.*

These factors favor transfer here. First, plaintiff's choice of venue is entitled to minimal deference when, as in this case: (i) plaintiff does not reside in the forum in which she filed suit; (ii) the claim arose elsewhere; (iii) there is a local interest in having localized controversies decided at home; (iv) defendants prefers a different forum; and (v) the ease of access to sources of proof favors transfer. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001); *Shalaby v. Newell Rubbermaid*, No. 06cv7026, 2007 WL 3144357, at *6 (N.D. Oct. 24, Cal. 2007) ("plaintiff's choice of forum should be given less weight when it is not 'the place where the operative facts occurred.'"). Moreover, because plaintiff seeks to represent a class, her choice of forum is "given less weight." *Bride*, 2021 WL 3493662, at *2; 15 Wright & Miller, Federal Practice & Procedure § 3848 (4th ed. 2018) ("[W]here the plaintiff seeks to vindicate rights of others the plaintiff's venue preference is weakened. Thus, courts have held that the factor is entitled to little weight ... in class actions.").

Because this action involves decisions made by the Peace Corps, most of the witnesses will be Peace Corps employees and the plaintiff herself. All of the relevant Peace Corps employees are located in the Washington, DC area. *See* Ex. B. The plaintiff lives in North Carolina; the District of Columbia thus is at least as convenient for her as San Francisco. Overall, the District of Columbia would be a more convenient forum for the parties and witnesses. Additionally, all of the records relating to the decision not to medically clear Ms. Doe are located at Peace Corps headquarters in Washington, D.C., or electronic storage sites in the Washington, D.C. metropolitan area. *Id.* ¶ 17. These factors favor transfer.

Both districts are familiar with questions of federal law, although the District of Columbia has extensive experience with litigation involving the federal government, as more than half of its cases involve claims by or against the United States. *See* Ex. A-3 (United States Courts, U.S. District Courts–Civil Federal Judicial Caseload Statistics Table C-1); *cf. Ecological Rts. Found. v. U.S. Envtl. Prot. Agency*, No. 19cv4242, 2019 WL 5295124, at *4 (N.D. Cal. Oct. 18, 2019) ("D.D.C. sees more administrative law cases than other districts, and thus may be more familiar with it.," but "the degree to which D.D.C. is more familiar with administrative law than other federal courts is significantly lesser than the degree to which a federal court is more familiar with the law of its situs than are out-of-state federal courts"). Thus, the District of Columbia court is at least as familiar as this court with § 504's application to federal agencies.

As to the factor regarding docket congestion and likely speed-to-trial, defendant expects that the Court will be expeditious in moving this case toward resolution. However, defendant also understands that the Court has a heavy docket, and has relied on quantifiable data comparing docket congestion and speed-to-trial in deciding previous § 1404(a) motions; statistically, such data suggest that here, transfer should be favored. To assess speed-to-trial, this Court has examined the Federal Court Management Statistics compiled by the Administrative Office of the United States Courts. *See, e.g.*, *Chess v. Romine*, No. 18cv5098, 2018 WL 5794526, at *8 (N.D. Cal. Nov. 2, 2018). Those statistics show that the median time from filing to disposition of civil cases in the 12-month period ending June 30, 2021 in the Northern District of California was <u>7.6</u> months (for all cases, including both those that were terminated with court action and those that

did not involve court action). Ex. A-4 at 1, 3 (United States Courts, U.S. District Courts–Civil Federal Judicial Caseload Statistics Table C-5). For the District of Columbia it was <u>4.8</u> months. *Id.* at 1. The difference is somewhat greater when cases that were resolved without court action are excluded from the calculation of the median. The median time from filing to disposition of civil cases that were resolved by court action before pretrial in the 12-month period ending June 30, 2021 in the Northern District of California was <u>9.3</u> months. *Id.* at 1, 3. In the District of Columbia it was <u>5.5</u> months.[8] As of June 30, 2021, the Northern District of California had <u>13,033</u> civil cases pending. Ex. A-3 at 1, 2. The District of Columbia had <u>4,560</u> civil cases pending. *Id.* at 1.

Additionally, the District of Columbia has a stronger local interest in deciding the case because the operative events happened there. *See, e.g.*, *Thomas v. Twentieth Century Fox Film Corp.*, No. 21cv2720, 2021 WL 2434032, at *4 (N.D. Cal. June 15, 2021) (Beeler, J.); *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, No. 13cv3532, 2013 WL 6057824, at *3 (N.D. Cal. Nov. 15, 2013) (finding that the District of Columbia had a localized interest in hearing the case there because "the administrative process occurred in the District of Columbia and the federal defendants reside there."). A transfer would thus serve the public interest. *Thomas*, 2021 WL 2434032, at *4.

For these reasons, in the interests of justice and convenience of the parties and witnesses, the Court should transfer this case to the U.S. District Court for the District of Columbia.

## C. Plaintiff's Class Claims Are Legally Deficient.

Class allegations may be dismissed or stricken at the pleading stage. *Kennedy v. Unumprovident Corp.*, 50 Fed. App'x 354, 355 (9th Cir. 2002); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (district court did not err by dismissing class allegations); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to

---

[8] The median time from filing to disposition of civil cases that were resolved by court action *during trial* in the 12-month period ending June 30, 2021 for Northern District of California was <u>25.5</u> months. Ex. A-4 at 1, 3. The median time from filing to disposition by court action during trial of civil cases in the the District of Columbia was <u>19.4</u> months. *Id.* at 1.

determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."); Fed. R. Civ. P. 23 (directing courts to determine "as soon as practicable" whether the proposed class satisfies Rule 23's requirements). "[T]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete*, 767 F.2d at 1424; *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.").

To bring a class action, a plaintiff must satisfy both Federal Rules of Civil Procedure 23(a) and 23(b). Under Rule 23, "one or more members of a class may sue ... on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a). In addition, the plaintiff must show that one of the requirements of Rule 23(b) is met.

### 1. The Complaint Lacks Sufficient Factual Allegations Supporting the Class Claims

The logic driving the Supreme Court's decisions in *Twombly* and *Iqbal* is simple: Before the defendant is forced to undertake the considerable burden and expense of defending a suit, particularly in a complex case or class action where the potential for abuse is greatest, the plaintiff must provide necessary factual predicates to her allegations. The complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). In short, the complaint must contain sufficient facts to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

To that end, *Iqbal* sets out a two-step approach: First, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Second, the court should consider whether the factual allegations that

remain "plausibly give rise to an entitlement to relief." *Id.* If they do not, the court should dismiss the complaint for failure to state a claim. *See id.*

Because plaintiff fails to plead sufficient factual content to make her class claims plausible, the Court should dismiss or strike those claims. *See, e.g.*, *Miller v. Amazon.com Inc.*, No. 17cv3488, 2018 WL 6421868, at \*10 (N.D. Cal. Dec. 6, 2018) (striking class claims because the "class allegations are conclusory in nature and devoid of supporting facts"). Here, all of plaintiff's "factual" allegations in connection with her class claims are comprised of completely conclusory statements. She alleges that: "The Peace Corps fails to conduct individualized assessments or consider reasonable accommodations for invitees with disabilities when conducting its medical clearance process," FAC ¶ 2; "Peace Corps routinely fails to meet its obligations under the Rehabilitation Act by denying individuals with disabilities participation in the federally-funded program," *id.* ¶ 4; "[U]pon information and belief, as a regular practice and policy, the Peace Corps tends to screen out individuals who have been symptomatic of dozens of medical conditions within a designated time period, who have recently changed their medication, or who have ongoing treatment.," *id.* ¶ 23; "Upon information and belief, the Peace Corps does not consider or assess an applicant's potential need for disability-related accommodations during the medical clearance process," *id.* ¶ 25; and "Plaintiff Doe's experience is illustrative of how the Peace Corps' medical screening process discriminates against people with disabilities, including people with records of disabilities and perceived disabilities.," *id.* ¶ 43. It is not sufficient for plaintiff to rely on such legal conclusions or upon class-related inferences that are unsupported by the facts set out in the complaint.

Plaintiff repeatedly invokes the phrase "pattern, practice, and/or policy," *id.* ¶¶ 47, 50, 53, 54—even insisting that she is challenging a "uniform" and "single" "pattern, practice, and/or policy," ¶¶ 50, 54—but she provides no factual detail regarding what this alleged "pattern, practice, and/or policy" is other than that it is "failing to conduct individualized assessments and consider reasonable accommodations and/or perform compliant undue hardship/direct threat analyses for invitees with disabilities, records of disabilities, or perceived disabilities." *See id.*

¶ 47. This simple parroting of the applicable law plainly is inadequate.[9] *See, e.g.*, *Miranda v. Coach, Inc.*, No. 14cv2031, 2015 WL 636373, at *2 (N.D. Cal. Feb. 13, 2015) (dismissing overtime claim on ground that allegations defendants had "a consistent policy" of failing to pay overtime "merely parrot the statute without stating facts sufficient to make out a plausible claim").[10]

Many of the First Amended Complaint's class allegations are made "upon information and belief." FAC ¶¶ 23, 25, 47. While the *Twombly* plausibility standard allows a plaintiff to plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant," *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (internal citation omitted), class allegations tend to describe experiences of the class. The allegations here are not of a type that would be considered "peculiarly within the possession and control of the defendant." *See id.*; *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."). Courts deem such conclusory allegations based solely "upon information and belief" to be insufficient to defeat a motion to dismiss. *See, e.g.*, *Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, No. 16cv3013, 2017 WL 4269458, at *5 (D.S.C. Sept. 26, 2017); *Mann Bracken, LLP v. Exec. Risk Indem., Inc.*, No. 15cv1406, 2015 WL 5721632, at *7 (D. Md. Sept. 28, 2015); *Crist v. Republic of Turkey*, 995 F. Supp. 5, 11 (D.D.C. 1998); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (a plaintiff "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory").

As here, the plaintiff in *Miller v. Amazon.com* limited the factual allegations in her complaint to her own experiences and otherwise included class allegations that were "conclusory

---

[9] Plaintiff also fails to articulate whether the alleged discrimination is based on disparate treatment or disparate impact or both. Disparate impact claims that rely on statistical evidence to prove discrimination are subject to a higher standard. The plaintiff must "allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [to] make out a prima facie case of disparate impact" to survive dismissal. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015).

[10] Indeed, "[i]n the employment class action context, courts have repeatedly rejected similar allegations that simply 'recite[] the statutory language setting forth the elements of the claim, and then slavishly repeat[] the statutory language as to the purported factual allegations.'" *Ovieda v. Sodexo Operations, LLC*, No. 12cv1750, 2012 WL 1627237, at *3 (C.D. Cal. May 7, 2012) (citing cases).

in nature and devoid of supporting facts." *Miller*, 2018 WL 6421868, at *10. This court struck the class allegations for failure to plead commonality, finding such conclusory allegations insufficient. *Id.* Likewise, in *Bush v. Vaco Technology Services*, this Court observed that "[w]ithout a single non-conclusory, factual allegation about [the] potential class members, Plaintiff has not plausibly alleged that any of these employees experienced the same alleged violations as Plaintiff," and dismissed the class claims for failure to meet the *Twombly* and *Iqbal* standards. *Bush v. Vaco Tech. Servs.*, No. 17cv5605, 2019 WL 3290654, at *5 (N.D. Cal. July 22, 2019); *see also, e.g.*, *Byrd v. Masonite Corp.*, No. 16cv35, 2016 WL 756523, at *4 (C.D. Cal. Feb. 26, 2016) (striking class claims where plaintiff failed to allege facts to support finding employer had "statewide policies or practices giving rise to [her] causes of action" or that "member[s] of the putative class had similar work experiences"); *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1046 (C.D. Cal. 2016) (dismissing class claims for failure to meet *Twombly* and *Iqbal* standards).

Plaintiff's conclusory class allegations stop "short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 566 U.S. at 678. Therefore, the Court should dismiss or strike plaintiff's class claims.

### 2.    Plaintiff Cannot Show Commonality or Typicality

Additionally, the class claims should be dismissed for failure to set forth sufficient allegations to meet the threshold requirements under Rule 23(a) of the Federal Rules of Civil Procedure. The typicality and commonality requirements of Rule 23(a) "tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011). The typicality requirement "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). Commonality requires plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). To satisfy these requirements, the lead plaintiff in a putative class action must demonstrate that all of the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 351.

There can be no commonality or typicality here because the details of each medical clearance process and determination, including potential accommodations, are not uniform but,

rather, intensely subjective, fact-driven, and unique for every volunteer applicant. Indeed, plaintiff's own situation—including her mental health history, her particular psychiatric medications, and the location where she sought to serve—is specific to her and neither common to nor typical of all applicants with a "disability, record of disability or perceived disability," FAC ¶ 44. Peace Corps' policy provides that "[i]n determining whether an Applicant is medically qualified, an individualized assessment is required regarding each of the [Peace Corps' medical eligibility] requirements." 22 C.F.R. § 305.4(b). An Applicant who is determined by medical screening staff not to be medically qualified for service may appeal that initial medical non-clearance decision to the Peace Corps' Pre-Service Review Board for additional review. *Id.* § 305.4(e). The very nature of the medical clearance process, including each applicant's qualifications and restrictions and reasonable accommodation decisions in light of those restrictions and qualifications, involve individualized inquiries with different variables and factors. *See* 22 C.F.R. § 305.4 (setting the Peace Corps' medical status eligibility standards).

The Ninth Circuit's decision in *Mantolete v. Bolger* is on point. *Mantolete*, 767 F.2d at 1425. There, an applicant with epilepsy brought individual and putative class claims against the Postal Service under the Rehabilitation Act, alleging that the Postal Service had improperly denied her a position based on her physical disability and seeking to maintain a class action on behalf of all persons with epilepsy. *Id.* The district court granted the Postal Service's motion to dismiss all claims other than the plaintiff's individual claim and to strike the class allegations. *Id.* On appeal, the plaintiff argued that the district court had abused its discretion by refusing to allow class discovery. *Id.* at 1424. The Court of Appeals rejected this argument, affirming dismissal of the class claims based on the necessity of case-by-case adjudication: "Whether a particular individual is a 'qualified handicapped individual' under the law will necessitate an inquiry into the individual's medical and work history as well as an inquiry into other factors bearing on the person's fitness for a given position." *Id.* at 1425. Thus, "[t]he district court did not err by denying expanded discovery or dismissing the class action allegations." *Id.*

Here, plaintiff must show that she could meet the Peace Corps' essential eligibility requirements with (or without) reasonable accommodations. *Zukle,* 166 F.3d at 1051 (finding

failure to establish *prima facie* case of disability discrimination under Rehabilitation Act because plaintiff's requested accommodations were not reasonable). In considering a § 504 claim, "the reviewing court would explore what this individual is retained to do, whether her disability affects her ability to accomplish those tasks, and whether the Peace Corps can accommodate her disability." *Mendez v. Gearan*, 947 F. Supp. 1364, 1370 (N.D. Cal. 1996). These are inherently individualized claims for which class treatment is ill-suited. *See Mantolete*, 767 F.2d at 1425; *Sokol v. New United Mfg.*, No. 97cv4211, 1999 WL 1136683, at *4–6 (N.D. Cal. Sept. 20, 1999).

Plaintiff seeks to represent an exceedingly diverse class that would include individuals with any type of disability, physical or mental, who sought to serve in any of the Peace Corps' numerous foreign locations. FAC ¶ 44. Because some disabilities can be more reasonably accommodated then others, plaintiff fails to show that her particular circumstances are "typical" of the class she seeks to represent. As in *Mantolete*, the very nature of plaintiff's disability-related allegations "underscores the importance of case-by-case adjudication." 767 F.2d at 1425. Absent an individual mini-trial for each purported class member, it would be impossible to determine who among the "thousands" of those provisionally offered Peace Corps volunteer positions and then not medically cleared, FAC ¶¶ 46, 2 n.1, were denied a position due to their "disability, record of a disability, or perceived disability," *Id.* ¶ 44.

Indeed, because all of plaintiff's class claims are premised on her own alleged disability and qualifications, class action treatment is not appropriate. *See, e.g.*, *Sokol*, 1999 WL 1136683, at *4–6; *Semenko v. Wendy's Int'l., Inc.*, No. 12cv836, 2013 WL 1568407, at *7 (W.D. Pa. 2013) (finding the commonality requirement not satisfied, and observing that "[a] number of courts have denied class certification when the class is defined so broadly that all persons with any disabilities, regardless of requested accommodations or modifications, are included"); *Davoll v. Webb*, 160 F.R.D. 142, 144–46 (D. Colo. 1995), *aff'd*, 194 F.3d 1116 (10th Cir. 1999) (denying certification of a class of employees who "have or will have disabilities" because "various factors would have to be considered in determining whether each named Plaintiff and each member of the putative class has or will have a 'disability'" under the law and thus meets the proposed class definition). The class, "as defined, contains no unifying or limiting criteria—with

respect to … positions … desired, … or conditions suffered, or accommodations sought—that potentially would permit classwide evaluation of whether each member of the class is 'qualified' and thus can perform the essential functions of a [Peace Corps volunteer] with or without reasonable accommodation." *Hohider v. UPS, Inc.*, 574 F.3d 169, 189 (3d Cir. 2009).

Because plaintiff cannot show commonality or typicality, the Court should dismiss or strike her class claims.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant defendant's motion.

Dated: October 26, 2021                              Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

  */s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS (N.Y. Bar 4461679)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Telephone: (202) 514-3336
Facsimile: (202) 616-8470
lisa.marcus@usdoj.gov

*Counsel for Defendant*