UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JANE DOE, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAROL SPAHN,<br><br>Defendant. | Case No. 21-cv-04007-LB<br><br>**ORDER TRANSFERRING CASE**<br><br>Re: ECF No. 47 |

## INTRODUCTION

In this putative class action, the plaintiff, who formerly lived in Berkeley, California, but now lives in North Carolina, claims that the Peace Corps discriminates against those with disabilities by improperly denying medical clearances.[1] The government moved to dismiss or transfer the case to the District of Columbia on grounds that venue is improper or inconvenient in this district.[2] It also moved to dismiss or strike the class claims under Federal Rule of Civil Procedure 12(b)(6) or 12(f), respectively, but asked the court to defer ruling on those motions in favor of the transferee court if the court transferred the case. Venue is proper in this district because the plaintiff resided here when

---

[1] First Am. Compl. (FAC) – ECF No. 28 at 3, 5, and 9 (¶¶ 7, 19, 44). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Def.'s Mot. to Dismiss – ECF No. 47 at 9.

ORDER – No. 21-cv-04007-LB

she applied to be a Peace Corps volunteer, received a provisional invitation, and was denied a medical clearance based on her mental-health condition. Transfer nonetheless is appropriate because (1) the allegedly discriminatory decision-making occurred in Washington, D.C., (2) the parties are geographically nearer to Washington, D.C. than to this district, and (3) the key witnesses are in Washington, D.C. The court transfers the case to the District of Columbia and does not rule on the motion to dismiss or strike under Rules 12(b)(6) and 12(f).

## STATEMENT

The Peace Corps provisionally offered the plaintiff a job in February 2020 as a Peace Corps Volunteer in North Macedonia but ultimately denied her a medical clearance. During the recruitment process, the plaintiff lived in Berkeley, California. She met with a Peace Corps advisor at UC Berkeley's Career Center. There, the advisor encouraged her to apply to the Peace Corps.[3] She completed a "Health History Form," received emails from the advisor, and met with the advisor in Berkeley to discuss the list of medications that the Peace Corps used to screen out applicants.[4] After the Peace Corps denied her medical clearance on February 25, 2020, the plaintiff appealed the decision, while she was living in Berkeley. During the COVID-19 pandemic, she relocated temporarily to Georgia (from June 2020 to August 2021) to be closer to her family, but she still worked remotely for a laboratory in Berkeley. She moved in September 2021 to North Carolina and "still assists the lab in Berkeley."[5]

The Pre-Service Review Board of the Peace Corps denied the plaintiff's appeal on August 5, 2020. She then filed an administrative complaint of discrimination on November 23, 2020. The Peace Corps Office of Civil Rights and Diversity notified her that her class allegations were insufficient for a class claim under Peace Corps regulations but accepted her individual complaint of discrimination for investigation. After more than 180 days lapsed without a final agency action,

---

[3] FAC – ECF No. 28 at 4–6, 8 (¶¶ 14–15, 27, 37).
[4] *Id.* at 4 (¶ 15).
[5] *Id.* at 5 (¶¶ 17–19).

ORDER – No. 21-cv-04007-LB         2

the plaintiff filed this lawsuit.[6] In the operative complaint, the plaintiff claims a violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), based on the Peace Corps' failure to engage in an interactive process for invitees with a disability.[7] She seeks to represent a class of "Peace Corps invitees from August 2, 2020 until the resolution of this complaint who were denied Volunteer positions in the Peace Corps because the Peace Corps denied them medical clearance for service due to their disability, record of a disability, or perceived disability."[8]

According to the government, the Peace Corps' Office of Health Services (in Washington, D.C., at the Peace Corps' headquarters) determines whether applicants are medically qualified for volunteer service, and the Behavioral Health and Outreach Unit (in the Office of Health Services) conducts pre-service assessments for applicants with behavioral-health issues and makes initial medical-clearance decisions.[9] "All events and omissions relating to the decision not to medically clear" the plaintiff took place in Washington, D.C.[10]

Based on the contention that the relevant events occurred in Washington, D.C., the defendant moved to transfer or dismiss the action based on 28 U.S.C. §§ 1404(a), 1406(a), and Federal Rule of Civil Procedure 12(b)(3).[11] The defendant also moved to dismiss, or in the alternative, strike the plaintiff's class claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f).[12] In this respect, the defendant asserts that the plaintiff's class allegations are conclusory and do not meet the standards set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and that the plaintiff's allegations fail to meet the commonality and typicality standards in Federal Rule of Civil Procedure 23.[13]

---

[6] *Id.* at 8, 13–14 (¶¶ 37, 59–63, 66–67).

[7] *Id.* at 14–15 (¶¶ 71–75).

[8] *Id.* at 9 (¶ 44).

[9] Def.'s Mot. to Dismiss – ECF No. 47 at 17 (citing Decl. of Denise Miles, Psy.D, Ex. B to *id.* – ECF No. 47-6 at 1–2 (¶¶ 1–2)).

[10] *Id.* at 17–18 (citing Decl. of Denise Miles, Psy.D, Ex. B to *id.* – ECF No. 47-6 at 1–2 (¶¶ 1–2)).

[11] *Id.* at 15–23.

[12] *Id.* at 9, 23–30.

[13] *Id.* at 23–30.

The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[14] The court held a hearing on December 9, 2021.

## GOVERNING LAW

### 1. Venue

In actions where the defendant is an officer or employee of the United States, venue is proper, except as otherwise provided by law, "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). If venue is improper, the court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### 2. 28 U.S.C. § 1404

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although Congress drafted § 1404(a) in accordance with the doctrine of forum non conveniens, it was intended to be a revision to, rather than a codification of, the common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a forum non conveniens dismissal. *Norwood*, 349 U.S. at 32.

The burden is upon the moving party to show that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see Westinghouse Elec. Corp. v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970).

---

[14] Consents – ECF Nos. 9, 16.

An action may be transferred to another court if (1) that court is one where the action might have been brought, (2) the transfer serves the convenience of the parties, and (3) the transfer will promote the interests of justice. *Kinney v. Clark*, No. 16-CV-01260-LB, 2016 WL 2739454, at *1 (N.D. Cal. May 11, 2016) (citing 28 U.S.C. § 1404(a)).

The Ninth Circuit has identified factors that a court may consider in determining whether a change of venue should be granted under § 1404(a). These factors include,

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. Courts may consider "the administrative difficulties flowing from court congestion [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

Generally, the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But the plaintiff's choice of forum is entitled to less weight where the plaintiff does not reside in the district and where the plaintiff seeks to represent a class. *Id.*; *Pralinsky v. Mut. of Omaha Ins.*, No. C 08-03191 MHP, 2008 WL 4532563, at *3 (N.D. Cal. Oct. 9, 2008).

## ANALYSIS

### 1. Venue is Proper in this District

The defendant asks this court to transfer or dismiss this action based on the contention that venue is improper under § 1391. Because neither the defendant nor the plaintiff resides in this district, venue is only proper in this district if a "substantial part of the events . . . giving rise to the claim occurred" here. 28 U.S.C. § 1391(e)(1)(B). While a "substantial part" of the events must have occurred in this district, a majority of the events need not have occurred in this district, and

there may be several districts where venue is proper. *Ward v. Certain Underwriters at Lloyd's of London*, No. 18-CV-07551-JCS, 2019 WL 2076991, at *5 (N.D. Cal. May 10, 2019).

The defendant contends that because "[a]ll events and omissions relating to the decision not to medically clear" the plaintiff occurred in Washington, D.C., venue is not proper in the Northern District of California. The defendant cites two Northern District cases — *Western Digital Technologies, Inc. v. Board of Regents of the University of Texas System*, No. C 10-3595 SBA, 2011 WL 97785 (N.D. Cal. Jan. 12, 2011), and *Jamba Juice Co. v. Jamba Group, Inc.*, No. C-01-4846 VRW, 2002 WL 1034040 (N.D. Cal. May 15, 2002) — to rebut the plaintiff's claim that her receipt of a medical non-clearance letter in Berkeley establishes venue in this district.[15] Neither case is persuasive here.

In *Western Digital*, the plaintiffs sought declaratory relief in this district in response to a patent-infringement action filed in Texas. 2011 WL 97785 at *1–2. The court held that venue was not proper here — even though one plaintiff (Hitachi) was headquartered in the district and the other (Western Digital) conducted most relevant operations in the district — because the "actions giving rise to the" declaratory judgment action (*i.e.*, the Texas patent infringement suit) occurred in Texas. *Id.* at *6–7. By contrast, the actions giving rise to this lawsuit occurred here: the Peace Corps recruited and interviewed the plaintiff, provisionally offered her a job, and denied her medical clearance, all while she lived in this district. "[T]he entire sequence of events underlying the claim is relevant" to the venue analysis. *Legal Additions LLC v. Kowalski*, No. C-08-2754 EMC, 2009 WL 1226957, at *11 (N.D. Cal. Apr. 30, 2009).

The decision in *Jamba Juice* also does not change the conclusion that venue is proper here. In that case, the plaintiff accused the defendant of trademark violations and, to establish venue, cited the availability of the defendant's website in the Northern District of California. 2002 WL 1034040 at *1. But the defendant was a small company that had its only office in Los Angeles County. *Id.* at *1. The court thus found that the "events or omissions" giving rise to the claim in

---

[15] Def.'s Mot. to Dismiss – ECF No. 47 at 17, 19.

ORDER – No. 21-cv-04007-LB            6

the Northern District of California were minimal. *Id.* at *3. By contrast, the Peace Corps' conduct in the district in this case is more extensive.

Relevant events (recruitment, job offer, medical-clearance denial) happened in Berkeley. Put another way, the plaintiff was injured here. The location of the injury is relevant to the venue analysis in tort cases and in cases that are "akin" to tort cases. *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001). The defendant in *Myers* allegedly violated the Fair Credit Reporting Act by ordering a credit report for two Nevada residents. *Id.* at 1071. The court found that the alleged violation was "akin to the tort of invasion of privacy and was felt in Nevada" and held that venue was proper in Nevada because "a substantial part of the events giving rise to the claim occurred in Nevada." *Id.* at 1076.

The government contends that the venue analysis in tort cases does not apply to venue in employment-discrimination suits. Quoting *Passantino v. Johnson & Johnson Consumer Products*, 212 F.3d 493 (9th Cir. 2000), the government argues that "any harm in a discrimination case occurs 'in the district where the plaintiff would have worked but for the alleged unlawful practice.'"[16] But *Passantino* said only this: "Title VII authorizes suit 'in any judicial district in the State in which the unlawful employment practice is alleged to have been committed' as well as in the district where employment records are kept, [and] in the district where the plaintiff would have worked but for the alleged unlawful practice." 212 F.3d at 504 (quoting 42 U.S.C. § 2000e-5(f)(3)). This quotation of Title VII's venue provision is not a holding that harm in a discrimination case occurs only where the plaintiff would have worked. To the contrary, the court in *Passantino* rejected a rule allowing "venue only where the decision to commit the unlawful employment practice is made" and instead held that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Id.* at 505–06.

A recent decision in a gender-discrimination case, *Service Women's Action Network v. Mattis*, provides helpful context. The court found that the plaintiff's gender-discrimination claim was

---

[16] Def.'s Reply in Supp. of Mot. to Dismiss – ECF No. 52 at 10.

ORDER – No. 21-cv-04007-LB         7

"akin to a tort claim" and that the venue issue required analyzing "not simply where the decisions were made regarding the Leaders First and Marines training policies but also where the decisions were implemented and [their] effects felt." 320 F. Supp. 3d 1082, 1087–89 (N.D. Cal. 2018). The court found that a substantial part of the events giving rise to the gender-discrimination claim against the U.S. Army occurred in this district because the Army has bases in this district, the challenged policy had been implemented at those bases, and the effect of the policy is that combat units in the district "are not yet integrated." *Id.* at 1088–89.

The government's alleged wrongful conduct in this case is similar to the conduct in *Service Women's Action Network*. The Peace Corps utilized recruiters in this district and, while the challenged decisions may have occurred elsewhere, it applied its medical-clearance policies to the plaintiff in this district and sent medical non-clearance correspondence to her here. Accordingly, venue is proper here because a substantial part of the alleged discrimination occurred here.

**2. Transfer is Appropriate Under § 1404(a)**

As an alternative to dismissal or transfer for improper venue under § 1406(a), the defendant seeks transfer to the District of Columbia under §1404(a). The court has discretion to transfer the case to a different district where the action "might have been brought" (*i.e.*, a district where venue is also proper) for the convenience of the parties and witnesses and the interests of justice under §1404(a). *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 935 (N.D. Cal. 2020) ("[S]ection 1404(a) permits transfer to 'any district where venue is also proper . . . .'") (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)); *Hunt v. Ameritas Life Ins. Corps.*, No. 4:19-CV-01657-JSW, 2019 WL 7666755, at *2 (N.D. Cal. Sept. 25, 2019) ("If venue is proper in the transferee district, the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and

fairness.'") (quoting *Stewart Org.*, 487 U.S. at 29). The parties agree that venue is proper in the District of Columbia.[17]

Given that venue is proper in the proposed transferee court, the court considers multiple factors to determine whether transfer is appropriate. These factors include "(1) [the] plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Lapachet v. Cal. Forensic Med. Grp., Inc.*, No. 16-CV-06959-HSG, 2017 WL 3917209, at *2 (N.D. Cal. Sept. 7, 2017) (collecting cases). This list of factors is not exhaustive. *Id.* And some factors have more weight or less depending on the context.

For example, the convenience of witnesses "is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate." *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 778 (N.D. Cal. June 2, 2015). On the other hand, the plaintiff's choice of forum is given little weight when the plaintiff commences an action in a forum where she does not currently reside. *Pralinsky*, 2008 WL 4532563, at *3. Also, the plaintiff's preferred forum is entitled to less weight in class actions and only "minimal consideration" when the plaintiff seeks to represent a class and the operative facts occurred elsewhere. *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-CV-03889-JD, 2018 WL 3549122, at *2 (N.D. Cal. July 24, 2018) (citing and quoting *Belzberg*, 834 F.2d at 739).

### 2.1    The Plaintiff's Choice of Forum and the Place of the Operative Facts

Because the plaintiff resided outside the forum when she filed the action and because she seeks to represent a class, the plaintiff's choice of forum is entitled to little deference. The plaintiff's choice of forum also is of less importance when the "operative facts" occur elsewhere. *Burns v. Svenson*, No. 19-CV-01209-HSG, 2019 WL 3554404, at *4 (N.D. Cal. Aug. 5, 2019). In *Burns*, the plaintiff sued partners in a Massachusetts-based restaurant enterprise for breach of contract in

---

[17] Def.'s Mot. to Dismiss – ECF No. 47 at 21 (citing 28 U.S.C. 1391(e)(1)(A) and (B)); Pl.'s Opp'n to Mot. to Dismiss – ECF No. 49 at 20 ("Plaintiff does not dispute that the District of Columbia meets the venue requirements of 28 U.S.C. § 1391(e).").

ORDER – No. 21-cv-04007-LB                                    9

the Northern District of California and opposed transfer to the District of Massachusetts on the ground that she was approached in San Francisco to participate in the ill-fated restaurant enterprise. *Id.* at *3. The court transferred the action to Massachusetts after determining that the operative facts, namely the defendant's alleged failure to perform, occurred in Massachusetts. *Id.* In short, the place where the "operative facts" occurred is often a critical factor.

Here, the plaintiff's claim for relief under 29 U.S.C. § 794(a) is based on allegations that the Peace Corps discriminates by (1) failing to give "individualized consideration or a compliant interactive dialogue" to Peace Corp invitees, and (2) using a medical-clearance process that screens out "individuals based on disability, without adequately assessing whether invitees are qualified with or without accommodation."[18] The defendant has produced evidence demonstrating that these allegedly discriminatory policies are implemented in Washington, D.C.[19]

While the plaintiff alleges that she was recruited at UC Berkeley, she does not accuse the local Peace Corps recruiter or office of engaging in a unique pattern of discrimination. Rather, the plaintiff seeks to represent a class of all Peace Corp invitees who have been denied medical clearances due to disability since August 2, 2020.[20] She alleges that "there are at least hundreds of individuals who are geographically dispersed around the country and the world and who satisfy the definition of the Proposed Class."[21] Accordingly, the operative facts primarily occurred in Washington, D.C. This lessens the importance of the plaintiff's chosen forum.

The plaintiff argues that, despite her residence outside the forum and the class allegations, her preferred forum is still entitled to "substantial weight."[22] To support this position, the plaintiff cites *Gresser v. Wells Fargo Bank*, No. C-11-06175 EDL, 2012 WL 1094338 (N.D. Cal. Mar. 29, 2012).[23] The *Gresser* court cited the plaintiff's address at the time of the alleged wrongful conduct and

---

[18] FAC – ECF No. 28 at 15 (¶ 74).

[19] Def.'s Mot. to Dismiss – ECF No. 47 at 17 (citing Decl. of Denise Miles, Psy.D, Ex. B to *id.* – ECF No. 47-6 at 1–2 (¶¶ 1–2)).

[20] FAC – ECF No. 28 at 9 (¶ 44).

[21] *Id.* at 9 (¶ 46).

[22] Pl.'s Opp'n to Mot. to Dismiss – ECF No. 49 at 21.

[23] *Id.* at 20–21.

compared the number of potential plaintiffs in the plaintiff's chosen forum with the number of potential plaintiffs in the proposed transferee forum. *Id.* at *5. Nonetheless, the court ultimately transferred the case after finding that "Plaintiff's choice of forum is given little weight because this is a putative class action, because the events giving rise to this action occurred in or near Maryland, and because Plaintiff has no discernible connection with the Northern District of California." *Id.* The *Gresser* case emphasizes that the location of the operative facts is often the key factor, which here is Washington, D.C. The plaintiff's chosen forum thus is not entitled to deference.

### 2.2   The Location of Witnesses and Parties

The location of witnesses supports transfer. The key witnesses are in Washington, D.C., not here. The location of witnesses is entitled to substantial weight. *Cung*, 108 F. Supp. 3d at 778. The plaintiff points to her treating physicians' residence here, but her medical treatment is not central to the claim of discrimination. *Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *6 (N.D. Cal. Dec. 19, 2008) ("the court must consider the importance of the witnesses" when evaluating transfer under § 1404(a)) (quoting *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160–61 (S.D. Cal. 2005)).

The convenience of the parties also favors transfer. The defendant is in Washington, D.C., and the plaintiff's residence is closer to Washington, D.C., than to San Francisco. To the extent the plaintiff relies on the location of her counsel, this is not relevant to the transfer analysis. *Pit River Tribe v. Bureau of Land Mgmt.*, No. 19-CV-02002-PJH, 2019 WL 6341566, at *7 (N.D. Cal. Nov. 27, 2019). In addition, the plaintiff's contention that the transferee court's possible lack of personal jurisdiction over the plaintiff is relevant to the transfer analysis is not persuasive. *See, e.g.*, *Hong v. Recreational Equip., Inc.*, No. 19-0951JLR, 2019 WL 5536406, at *3 n.2 (W.D. Wash. Oct. 25, 2019) ("The transferee court need not have personal jurisdiction over Plaintiff in order for transfer to be granted under 28 U.S.C. § 1404(a) because the requirement of personal jurisdiction 'does not protect the right of a plaintiff to bring suit in a forum that is convenient for him.'"). Accordingly, the location of parties and witnesses demonstrates that transfer is appropriate.

**2.3   Other Factors**

The other factors are either neutral or weigh in favor of transfer. Regarding local interest, this factor favors transfer. Because the allegedly discriminatory decision-making occurred in Washington, D.C., the local interest in this case is stronger there than it is here. *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, No. C 13-03532 WHA, 2013 WL 6057824, at *3 (N.D. Cal. Nov. 15, 2013) ("[T]he District of Columbia has a stronger local interest in this action than this district because the administrative process occurred in the District of Columbia. . . ."). While the plaintiff once lived in this district and alleged that UC Berkeley is "the all-time top producer of Peace Corps Volunteers," she now seeks to represent a class of individuals who are "geographically dispersed around the country and the world."[24] There are no especially strong local interests in this district.

The access-to-sources-of-proof factor is neutral. The alleged discriminatory decision-making occurs in Washington, D.C., which suggests that key documentary evidence is there. But electronic documents may be easily transported. *Critters of the Cinema, Inc. v. Nestle Purina Petcare Co.*, No. 1:16-CV-0123 AWI JLT, 2016 WL 2990619, at *7 (E.D. Cal. May 24, 2016).

Concerning the court-congestion and familiarity-with-applicable-law factors, the government cites evidence suggesting that the District of Columbia is less congested than this district and hears more cases involving the federal government.[25] The plaintiff counters with anecdotal evidence of delay spanning months or years in the District of Columbia.[26] The relative congestion of the courts in each district is not especially important. *Royal Queentex Enters. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000) ("Relative court congestion is at best, a minor factor in the section 1404 calculus."); *see also Chesapeake Climate Action Network*, 2013 WL 6057824, at *3 (declining to weigh congestion as a factor considering conflicting evidence on the relative congestion of the transferor and transferee courts).

---

[24] FAC – ECF No. 28 at 4 (¶ 14), 9 (¶ 46).
[25] Def.'s Mot. to Dismiss – ECF No. 47 at 22–23.
[26] Pl.'s Opp'n to Mot. to Dismiss – ECF No. 49 at 23–24.

Also, the time to disposition in the district is not the only element relevant to evaluating court congestion for purposes of § 1404(a). *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *12 (N.D. Cal. Feb. 22, 2008) (while cases may be disposed of more quickly in the Northern District of California than in Massachusetts, each judge in the Northern District of California had more pending cases; this may support an inference that litigants in Massachusetts "have access to more judicial resources and prompter judicial attention (on a per case basis)"). In this respect, in the twelve-month period ending June 30, 2021, there were 771 weighted filings per judgeship in the Northern District of California, while in the District of Columbia, there were 306. U.S. Cts., Fed. Ct. Mgmt. Stat. – Profiles (June 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf. The longer time to disposition may reflect the relative burdens on each judge and not any difference in access to judicial resources. Accordingly, this minor factor is neutral.

Furthermore, any difference between the transferor and transferee court's familiarity with the applicable law is insignificant. The plaintiff's suit is based on a federal law, and federal courts are equally able to apply federal law. *Shields v. Amerigas Propane, Inc.*, No. 2:15-CV-00754-KJM, 2015 WL 5436772, at *3 (E.D. Cal. Sept. 15, 2015) (courts in different districts were equally able to apply federal law); *U.S. ex rel. Frazier v. IASIS Healthcare Corp.*, 812 F. Supp. 2d 1008, 1014 (D. Ariz. June 1, 2011) (same); *see Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. 19-CV-04242-RS, 2019 WL 5295124, at *4 (N.D. Cal. Oct. 18, 2019) (stating that "the degree to which D.D.C. [the proposed transferee court] is more familiar with administrative law than other federal courts is significantly lesser than the degree to which a federal court is more familiar with the law of its situs than are out-of-state federal courts" and holding that the transferee court's greater experience with administrative law was negligible under § 1404(a)).

In sum, the relevant considerations weigh in favor of granting the defendant's motion to transfer this action to the District of Columbia under § 1404(a). The court grants the motion.

## CONCLUSION

The court transfers the case to the District of Columbia under § 1404(a) and — as the government suggests — does not decide the government's motion to dismiss and strike the class claims so that those issues can be decided by the transferee court.

This disposes of ECF No. 47.

**IT IS SO ORDERED.**

Dated: December 21, 2021

_____
LAUREL BEELER
United States Magistrate Judge